In re John Richard STEVENS, Patricia Louise Stevens, Debtors/Plaintiffs,

v.

ASSOCIATES FINANCIAL SERVICES, Defendant.

Bankruptcy Nos. 82 B 04400 Mc, 82 Mc 1927.

United States Bankruptcy Court, D. Colorado.

Nov. 18, 1982.

Edward I. Cohen, Denver, Colo., for debtors/plaintiffs.

Thomas F. Farrell, Denver, Colo., for defendant.

## ORDER DISALLOWING IN PART LIEN AVOIDANCE AGAINST ASSOCIATES FINANCIAL SERVICE UNDER 11 U.S.C. § 522(f)

JOHN F. McGRATH, Bankruptcy Judge.

The question presented to this Court is whether a renewal loan which includes the balance of the original purchase money loan plus a cash advance to the Debtor will cause the security to lose its purchase money character for purposes of lien avoidance action under 11 U.S.C. § 522(f).

The parties have stipulated to the following facts:

1. On June 15, 1981, the Creditor loaned the Debtors a principal amount of $1,300.00, with payments making a total of $1,610.40, to purchase a Quasar UH5015 and a Curtis Mathis combination.

2. On November 4, 1981, the Creditor and Debtors entered into a loan agreement with a principal balance of $1,564.00. This included $1,145.42, the remaining principal balance on the June 15th loan, and an advance to the Debtors of $230.95, insurance cancellation of $185.63, and a filing fee of $3.00. The payment total on the rewritten loan is $2,377.17. The original collateral is security for this note.

3. The Debtors have paid $541.90, less a late charge of $22.63 on this renewal note. The total balance at time of filing was $1,857.90, with a net balance of $1,465.24.

4. This is the entire agreement of the parties concerning this case.

■ Where an original loan transaction is rewritten but still covered by the original collateral, the date of attachment of the security interest is the time of the original transaction. This is true even though new funds have been advanced. For purposes of lien avoidance under 11 U.S.C. § 522(f) it does not matter whether the later transaction is called "a new loan, renewal loan, roll over or flipping". *In Re Cook,* 19 B.R. 942 (Bkrtcy.D.Colo.1982).

The relevant question is whether the parties intended to have the original security agreement remain effective or whether they intended to create a totally new debt and extinguish the old. One indication that the original security agreement was intended to remain effective is whether a termination has been requested or filed pursuant to *Colo.Rev.Stat.* § 4-9-401 (1973, amended 1977). *In re Carolyn Kaye Hanson,* No. 80 Mc 2239 (Bkrtcy.D.Colo.1980).

■ There is no evidence that John and Patricia Stevens and Associates Financial Service intended to totally extinguish the old debt. There was no termination filed or requested. The same security was used for the rewritten note, even though new funds were advanced. The renewal security took the place of the old without any break in continuity. Thus we find that the date of attachment of Associates Financial Services' security interest in the Quasar UH5015 and Curtis Mathis combination was at the time of the original security agreement.

However, our real issue is whether the refinancing causes the security to lose its purchase money character.

Many cases have held that if an item secures any debt other than its own price the security interest in the item automatically is transformed into a nonpurchase money security interest. *In re Manuel*, 507 F.2d 990 (5th Cir.1975); *In Re Staley*, 426 F.Supp. 437 (M.D.Ga.1977). There are, however, differing opinions.[1]

Some courts have focused on the language used to define "purchase money." *Colo.Rev.Stat.* § 4–9–107 (1973) defines purchase money security interest as follows:

A security interest is a "purchase money security interest" *to the extent* that it is:

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used. (Emphasis added.)

Reading the definition as it is written there seems to be no requirement that the item secure only its purchase price. Neither in the Uniform Commercial Code nor its comments is it stated that a loan cannot be partly purchase money and partly nonpurchase money, *In re Gibson, supra.*

11 U.S.C. § 522(f)(2) excepts a purchase money security interest from its avoidance provisions. The legislative history of 522(f) indicates its purpose.

Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the form he signs.

\* \* \* \* \* \*

The exemption provision allows the debtor, after bankruptcy has been filed . . . to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have. *H.R.Rep. No. 95–595*, 95th Cong., 1st Sess. 127 (1977), *U.S.Code Cong. & Admin.News* 1978, pp. 5787, 6088.

"Thus Congress enacted § 522(f) to allow the consumer debtor to avoid security interests in their already owned, used household goods (cite omitted) and not security interests in collateral which the money advanced was used to purchase." *In re Gibson,* supra, p. 266.

■ We therefore conclude that rather than strictly adhering to either the "transformation" rule or an opposite rule, the Court should look at all the facts of the particular transaction to determine whether the purchase money character of the transaction has been retained.

Looking at whether the original value has in fact been "paid" should be the distinguishing factor. *In re Slay,* 8 B.R. 355 (Bkrtcy.E.D.Tenn.1980.) "The essence of a purchase money security interest is that the collateral acquired secures payment of its purchase price. If it secures payment of some other debt, then *to that extent* it is not purchase money." *Slay,* supra, p. 357. (Emphasis added.)

Where there have been numerous renewal loans over a period of years the purchase money character has generally been lost. *In re Jones,* 5 B.R. 655 (Bkrtcy.M.D.No.Car. 1980) involved four renewals after the original purchase money loan, and the time span was from August, 1974 to February of 1980. That court held that the refinancing extinguished the purchase money character of the security interest.

But where the original amount advanced is clearly part of the renewal loan, the original purchase money status should stand with regard to the amount carried forward.

---

1. The Fifth Circuit is the only Federal Circuit Court to adopt the transformation rule and the Tenth Circuit has not adopted the rule. *In re Gibson,* 16 B.R. 257, 267 (Bkrtcy.D.Kans.1981).

*In re Conn,* 16 B.R. 454 (Bkrtcy.W.D.Ky. 1982) involved a renewal loan eleven months after the first purchase money advance. On the renewal there was a new cash advance and additional security obtained. The court found the amount carried forward from the original note retained its purchase money status.

 Where there have been no payments made on the rewritten note it is clear that the amount of purchase money retained is the amount of the balance on the old note incorporated into the new note. *In re Slay,* supra. If there have been payments made on the renewal loan and there are no governing statutes nor contractual provisions controlling, the courts have used the first-in, first-out method to determine the amount of the purchase money security. *In re Gibson,* supra. *In re Conn,* 16 B.R. 454 (Bkrtcy.W.D.Ky.1982). Under the FIFO method, the debtor's payments are first assigned to the debts first incurred.

> FIFO pro-ration is blessed by the UCC and will thwart unconscionability challenges since the debtor will free items of collateral from the security interest as he pays. Moreover, FIFO plans will seldom seriously set back even the most collateral hungry secured creditor. First purchased property will also be the first to begin depreciating, and most consumer goods depreciate fast. In other words, the consumer financer's reliance on collateral should normally diminish swiftly and in direct proportion to the collateral's age. J. White and R. Summers, *Uniform Commercial Code,* 2d Ed. (1980) p. 923.

Therefore, looking at the facts presented to us in this matter we conclude that the security interest attached with the original security agreement of June 15, 1981. There was only one renewal note, some five months later, so the Court can with certainty determine the amount remaining of the original purchase money transaction. The amount carried forward into the new note on November 4, 1981, was $1,145.42. The Debtors have made payments on the new note in the amount of $541.90, less late charges of $22.63, making total payments on the note of $519.27. Therefore the current purchase money amount of this security interest is $626.15. The remaining balance, represents a nonpurchase money security interest.

IT IS THEREFORE ORDERED that the lien held by Associates Financial Services is a purchase money security interest to the extent of $626.15 and the Debtors' motion to void said lien under 11 U.S.C. § 522(f) is denied to the extent of the purchase money security interest.