In re Keary Lynn RUSSELL and Sarah Marie Russell, Debtors.

Keary Lynn RUSSELL and Sarah Marie Russell, Plaintiffs,

v.

ASSOCIATES FINANCIAL SERVICES COMPANY OF OKLAHOMA, INC., Defendants.

Bankruptcy No. BK–82–2137.

United States Bankruptcy Court, W.D. Oklahoma.

April 18, 1983.

---

Diana G. Mueller, Oklahoma City, Okl., for plaintiffs/debtors, Keary Lynn and Sarah Marie Russell.

David O. Beal, Oklahoma City, Okl., for defendant Associates Financial Services.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

### STATEMENT OF THE CASE

The question presented to this Court is whether a renewal loan which includes the balance of the original purchase loan plus a cash advance to the debtor will cause a security to lose its purchase money character for purposes of lien avoidance action under 11 U.S.C. § 522(f).

The parties have stipulated to the following facts:

1. On September 10, 1981, the Debtor, Keary Russell, executed a Purchase Money Contract and Security Agreement with Associates Financial Services Company of Oklahoma, Inc. (hereinafter "Associates"), on a Curtis Mathis Home Entertainment Center for a purchase price of $1,999.99

with tax of $80.01 for a total cash price of $2,080.00. With finance charges the total deferred payment price was $3,057.12. This Retail Installment Security Agreement was numbered 102081–0 and had a annual percentage rate of 24.21%. Payments were approximately $85.00 per month for thirty-six months.

2. On May 25, 1982, debtors came into the office of Associates and made written application and obtained $542.98 in cash from Associates. A Security Agreement on loan 102081–0 was marked "PAID MAY 25, 1982".

3. Thereafter, Loan Agreement number 061108–0 was prepared and executed by the Debtor's on May 25, 1982, for $2,915.26 which included the following:

A. Net balance to Associates on Account No. 102081–0: $1,919.30

B. Funds to borrower, $542.98.

C. Insurance:
1) Credit Life, $81.90
2) Credit, Accident and Health, $172.80
3) Household Contents Insurance, $193.50
4) Non-filing Insurance, $5.00
TOTAL INSURANCE: $492.50

This Loan Agreement, with the above numbers included, indicated an amount financed of $2,915.26 or a total of payments of $3,840.00. The annual percentage rate was 22.54% and payments of $128.00 each were to be made for thirty months. The security for this loan was listed as household goods which included the Curtis Mathis Television among other household furniture.

4. Debtor's paid seven payments of approximately $85.00 each or a total of $595.00 on the Retail Installment Agreement number 102081–0 and three payments of $128.00 each on Loan Agreement number 061108–0.

5. This is the entire agreement of the parties concerning this case.

The Debtors now seek to avoid the lien on the television on the ground that the purchase money character of Associates' security interest was lost upon refinancing.

## LAW

This issue is singularly relevant in a bankruptcy context. Should a creditor have a purchase money security interest, a consumer debtor cannot use 11 U.S.C. § 522(f)(2) to avoid the lien, the pertinent part of which provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . , if such lien is—

    \*    \*    \*    \*    \*    \*

(2) a nonpossessory, non-purchase-money security interest in any—

(A) household furnishings, household goods, . . . appliances, . . . that are held primarily for the personal, family or household use of the debtor or a dependent of the debtor;

If a creditor's interest is transformed into a non-purchase money security interest, then a debtor may use § 522(f) to avoid the lien. The issue has wide ramification in the commercial setting, hence a careful analysis is required.

The question of whether or not a television is a household good entitled to an exemption under Oklahoma law and therefore entitled to lien avoidance under 11 U.S.C. § 522(f) is not before the Court. If it were, the question has been answered in *In re Fisher,* 11 B.R. 666 (Bkrtcy.W.D.Okl.1981).

Many cases have held that if an item secures any debt other than its own price the security interest in the item automatically is transformed into a nonpurchase money security interest. *In re Manuel,* 507 F.2d 990 (5th Cir.1975); *In re Staley,* 426 F.Supp. 437 (M.D.Ga.1977); *In re Kelley,* 17 B.R. 770 (Bkrtcy.E.D.Tenn.1982); *In re Calloway,* 17 B.R. 212 (Bkrtcy.W.D.Ky.1982); *In re Rosen,* 18 B.R. 723 (Bkrtcy.S.C.1981). There are, however, contra opinions. *Stevens v. Associates Financial Services,* 24 B.R. 536 (Bkrtcy.D.Colo.1982); *In re Conn,* 16 B.R. 454 (Bkrtcy.W.D.Ky.1982); *In re Gibson,* 16 B.R. 257 (Bkrtcy.D.Kan.1981); *In re Holland,* 16 B.R. 83 (Bkrtcy.N.D.Ohio 1981). The Fifth Circuit is the only Federal Circuit Court to adopt the transformation rule and the Tenth Circuit has not adopted the rule. *In re Gibson, supra.*

A majority of cases which have acquiesced to the transformation rule have done so based upon an interpretation of the respective state versions of the Uniform Commercial Code definition of purchase money security interest. In Oklahoma it is defined at 12A O.S.1981 § 9–107:

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

The cases which follow the automatic transformation rule have focused upon Uniform Commercial Code Comment 2 to this section as supportive of their decisions. In Oklahoma the Comment provides:

2. When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation': the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.

These courts have held that the above quoted language implies the exclusion from the purchase money category any security interest taken as security for, or in satisfaction of, a pre-existing claim or antecedent debt.

In the context of construing § 9–107, the Court notes the Uniform Commercial Code should be liberally construed and applied to

promote its underlying purposes and policies. 12A O.S.1981 § 1–102(2), namely:

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

This Court does not read the Code Comment as substantially altering § 9–107. There is no indication in the Comment that § 9–107 is not to be construed liberally. Comment 2 to § 9–107 prohibits the taking of purchase money security interests in antecedent debts, and could likewise apply to future advances, but it does not demand that purchase money status be denied in its entirety because an item secures both its own price and antecedent debts or future advances. The only way "to the extent" can be given meaning is to find that a secured debt may be split into two parts, a purchase money part constituting so much of the debt as represents the price of the collateral and a nonpurchase money part constituting the 'add on' debt.

In the instant case, the debtors contend that the security agreement covering loan 102081–0, by being marked "PAID", was transformed from a purchase money security agreement into a mere non-purchase money security agreement with the T.V. in question, along with other household goods, as collateral securing the loan.

The facts at bar are almost identical with those present in *In re Conn, supra.* In that case, the debtors purchased a color television set from the assignor of the creditor. At that time, the debtor executed a retail installment contract and the seller retained a purchase money security agreement in the television. A week later, the seller assigned the contract to the creditor. Subsequently, the debtor refinanced the obligation for the television by executing with the creditor a note for $1,045.13. At the time of the refinancing, the outstanding balance on the first note was $342.39. That balance was paid, the first note was cancelled and the debtor was given approximately $700.00 in new money. The creditor took as security for the second note the television set, along with numerous household goods.

Based on these facts the Court in *In re Conn, supra,* held that where a creditor obtained a purchase money security interest in a television console and debtors refinanced the obligation by executing a new note, the purchase money security interest taken under the original note was not eliminated by the refinancing to the extent of the balance on the original note but was merely transferred to and increased in amount by another obligation.

To follow debtors' contention would be to ignore the substance of the refinancing transaction. Though in form the original note is cancelled, its balance is absorbed into the refinancing loan. To the extent of that balance the purchase money security interest taken under the original note likewise survives because what is owed on the original note is not eliminated, it is merely transferred to, and increased in amount by, another obligation. The refinancing changes the character of neither the balance due under the first loan nor the security interest taken under it. To hold otherwise would frustrate the intent behind the Uniform Commercial Code, 12A O.S.1981 § 9–107.

The Bankruptcy Code, 11 U.S.C. § 522(f)(2) excepts a purchase money security interest from its avoidance provisions. The legislative history of 522(f) indicates its purpose:

Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the form he signs.

\*   \*   \*   \*   \*   \*

The exemption provision allows the debtor, after bankruptcy has been filed ... to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching

creditors. The bill eliminates any unfair advantage creditors have. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 127 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6088.

It can be seen then, that Congress enacted § 522(f) not for the purpose of permitting the consumer debtor to avoid security interest in collateral which was purchased by the money advanced but rather its purpose was to permit avoidance of security interests in already owned, household goods.

This Court concludes that rather than strictly adhering to the "transformation" rule, the Court should look at all of the facts of the particular transaction to determine whether the purchase money character of the transaction has been retained.

Looking at whether the original value has in fact been "paid" should be the distinguishing factor. *In re Slay,* 8 B.R. 355 (Bkrtcy.E.D.Tenn.1980.) "The essence of a purchase money security interest is that the collateral acquired secures payment of its purchase price. If it secures payment of some other debt, then *to that extent* it is not purchase money." *Id.* at 357 (Emphasis added).

The next problem confronting the Court is determining the extent of the purchase money interest. The extent of the interest can be proved through use of a method of payoff where purchase money security interests are retired as the price of the collateral is paid off. In consumer cases where the seller is extending credit, the Uniform Consumer Credit Code (U3C) provides a First In First Out payment method, and retires the security interest when the purchase price is paid. *See* 14A O.S.1981 § 2–409. "Seller" has been defined as including an assignee of the seller's right to payment. 14A O.S.1981 § 2–107. Under the FIFO method, the debtor's payments are first assigned to the debts first incurred.

FIFO pro-ration is blessed by the UCC and will thwart unconscionability challenges since the debtor will free items of collateral from the security interest as he pays. Moreover, FIFO plans will seldom seriously set back even the most collateral hungry secured creditor. First purchased property will also be the first to begin depreciating, and most consumer goods depreciate fast. In other words, the consumer financer's reliance on collateral should normally diminish swiftly and in direct proportion to the collateral's age. J. White and R. Summers, Uniform Commercial Code, 2d Ed. (1980) p. 923.

Use of this method facilitates equity and certainty to both the debtor and the secured creditor. It provides an easily applied rule of thumb, for purposes of purchase money status—what is bought first is paid off first. Applying the principles of equity to the facts of the case at bar it is the feeling of the Court that the debtor should not prevail in avoiding the plaintiff's lien on the television in question.

In the instant case, the debtor has made three payments under the second loan. The payments were in the amount of $128.00, which when applied to the outstanding balance on the first note of $1,919.38 reduces that balance to $1,515.38. The unpaid price of the collateral that secured the first note is therefore $1,515.38, and the security interest in it remains purchase money to that extent.

## CONCLUSION

Rather than strictly adhering to the "transformation rule" in determining whether security has lost its purchase money character for lien avoidance purposes by reasons of refinancing, this Court will look at all the facts of the particular transaction. A determination of whether the original value has in fact been "paid" should be the distinguishing factor. Where the original amount advanced is clearly part of the renewal loan, the original purchase money status should stand with regard to the amount carried forward.

The debtor's motion for an order avoiding the lien of Associates Finance on a Curtis Mathis television set is hereby denied. The lien retains its purchase money character to the extent of the unpaid purchase price, and

that unpaid price this Court has determined to be $1,515.38.

IT IS SO ORDERED.