**In re Kenneth Doyle MASON and Deborah K. Mason, Debtor.**

**Bankruptcy No. 84–08035.**

United States Bankruptcy Court,
E.D. Michigan, S.D.,
Flint.

Jan. 31, 1985.

Richardo Kilpatrick, Ann Arbor, Mich., for Household.

George B. Rasch, Flint, Mich., Trustee.

Beth Allen Everson, Flint, Mich., for debtor.

### MEMORANDUM OPINION REGARDING DEBTORS' MOTION TO AVOID SECURITY INTEREST

ARTHUR J. SPECTOR, Bankruptcy Judge.

This matter comes before the Court pursuant to the motion of Kenneth and Deborah Mason, Debtors herein, to avoid the security interest held by Household Finance Corp., on the grounds that the credi-

tor has a non-possessory, non purchase-money security interest in the Debtors' household goods unperfected by filing or possession. A hearing was held on October 10, 1984, at which time the parties were requested to submit briefs on the issue of whether Household Finance Corp.'s refinancing of the Debtors' first loan and the granting of another loan extinguished the purchase-money nature of the original obligation; the parties were asked to give special emphasis to Michigan law on the subject. To date, only the Debtors have responded.

The facts of this case, as stipulated at the hearing, are relatively straightforward. In June, 1980 the Debtors applied for and received a loan from Household Finance, which they used to purchase a home stereo system. Slightly over one year later, on June 23, 1981, the loan was re-written. Part of this second obligation was applied to retire the previous debt, and the Debtors received an undetermined amount of extra funds; in return, the lender took a security interest in the stereo and other household goods. Apparently the cash received at this time was not used to purchase new goods.

 On August 6, 1984, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code and shortly thereafter filed the instant motion. Simply stated, the Debtors argue first that their initial loan from Household Finance was satisfied by the refinancing in July, 1981, thus extinguishing the creditor's purchase-money security interest in the stereo. Moreover, they claim that because the refinancing agreement was not entered into to enable them to purchase new goods, but was made in consideration of an antecedent debt, the refinancing is not a purchase-money security agreement either.

Section 522(f) of the Bankruptcy Code allows the debtor to avoid the fixing of a lien on otherwise exempt household goods and furnishings if the creditor's lien is a "nonpossessory, nonpurchase-money security interest". This term of art is not defined in the Code; it is, however, a matter

which is addressed by state law. M.C.L.A. § 440.9107 provides that "a security interest is a 'purchase-money security interest' to the extent that it is ... (b) taken by a person who by making advances ... gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." On the facts presented, there is no question that the initial loan gave rise to an enforceable purchase-money security interest in the Debtors' stereo; the question is whether such interest survives a refinancing or consolidation of the initial loan. Inasmuch as the cash received pursuant to the 1981 loan agreement was not used for the purchase of new goods, the issue may more precisely be framed as whether it is possible for the creditor to have a security interest which is in part purchase-money and in part nonpurchase-money.

A review of the many cases dealing with this issue persuades us that the creditor cannot have a "hybrid" security interest. A recent opinion by the Ninth Circuit Court of Appeals is informative, especially since it involves facts not dissimilar to the instant proceeding. In *In re Matthews*, 724 F.2d 798 (9th Cir.1984), the debtor had purchased a piano with funds loaned from the defendant loan company. Approximately a year later, the defendant agreed to refinance the loan; in doing so, the prior obligation was paid off, insurance payments were made, and the debtors received a minimal amount of new cash. Eventually, the debtors filed a bankruptcy petition and challenged the creditor's interest. The Ninth Circuit reversed the decision of the Bankruptcy Appellate Panel and held that the defendant's purchase-money security interest in the piano was defeated. The court looked towards the California enactment of the UCC and the official comments accompanying § 9–107, and determined that any obligation incurred in order to satisfy an antecedent debt did not qualify as a purchase-money security interest under either the UCC or the Bankruptcy Code. *See also In re Hobdy*, 18 B.R. 70 (Bankr.W.D.Ky.1982); *In re Calloway*, 17

B.R. 212 (Bankr.W.D.Ky.1982); *In re Kelley,* 17 B.R. 770 (Bankr.E.D.Tenn.1982); *In re Synder,* 16 B.R. 380 (Bankr.S.D. Ohio 1982); *In re Slay,* 8 B.R. 355 (Bankr. E.D. Tenn.1980); *In re Simpson,* 4 U.C.C. Rep. Serv. 243 (Bankr.W.D.Mich.1966).

Several courts have held that since § 9–107 states that a security interest is purchase-money "to the extent" that it secures the cost of the goods, it is permissible to have a security interest that is only partially purchase-money. *See Pristas v. Landaus of Plymouth, Inc.,* 742 F.2d 797 (3d Cir.1984) and cases cited. These courts have then resorted to various methods of determining the extent of the creditor's security interest. Some have resorted to state common law or statutes, *id.; In re Russell,* 29 B.R. 270 (Bankr.W.D.Okla. 1983); *In re Brouse,* 6 U.C.C. Rep. Serv. 471 (Bankr.W.D.Mich.1969). Others have fashioned their own formulae for determining how much of the debtor's obligation is allocable to the secured goods and how much is not. *In re Gibson,* 16 B.R. 257 (Bankr.D.Kan.1981); *In re Conn,* 16 B.R. 454 (Bankr.W.D.Ky.1982). Of course, if the security agreement itself contains a formula for apportionment, those terms may be applied.

In this state, the Retail Installment Sales Act, M.C.L.A. § 445.851 *et seq.* governs the rights of buyers and sellers under installment sales contracts such as the initial agreement between the Debtors and Household Finance. Section 445.861(c) provides that when the vendee makes "subsequent purchases", payments of principal after consolidation are allocated proportionally between the original and subsequent purchase in the same ratio that the cost of the originally purchased item bears to the total debt. In *In re Brouse, supra,* the bankruptcy court held that this provision was incorporated into retail sales agreements, and accordingly ruled that despite subsequent credit purchases, the creditor retained an enforceable purchase-money in-

terest in the previously purchased item to the extent of the unpaid balance remaining.

■ Unfortunately for the creditor, the refinancing agreement here is not one of those transactions to which the Retail Installment Sales Act is meant to apply. Household Finance is not a "retail seller", and the refinancing is not a "retail installment transaction" as those terms are defined in M.C.L.A. § 445.852. The provision regarding consolidations refers to "subsequent purchases". There was no subsequent purchase here. When the initial loan was refinanced, the creditor gave new value in the form of cash; however, the money was not used by the Debtors to acquire rights in or the use of new goods. It did not give rise to a purchase-money security interest in other items. We hold that M.C. L.A. § 445.861 was intended to apply only when the purchaser has made multiple purchase-money transactions; it does not apply to unsecured loans by an entity not engaged in retail sales.

We decline to apply the statutory formula to a transaction for which it was not intended, and there appears to be no other relevant provision. Since the loan agreement itself apparently contains no formula for allocating payments between the debt for the stereo and the subsequently advanced funds,[1] we hold that Household Finance does not have a purchase-money security interest in the stereo. It expired when the Debtors paid off the initial loan with the proceeds of the refinancing. Although some courts have undertaken the task of developing their own apportionment formulae, this Court will not now perform a chore which the parties could have done over three years ago. Instead, a regard for workable guidelines in transactions of this sort suggests that in the absence of a clear contractual or statutory basis for determining the extent of a creditor's remaining purchase-money interest, the entire transaction should be declared to be non-

1. The actual security agreement was not submitted at the hearing on this matter, nor does it appear elsewhere in the pleadings of the parties or as part of proof of claim. Since it would

obviously have been in the creditor's interest to bring such an agreement to the Court's attention, we can safely assume that no such express agreement exists.

purchase-money. *In re Kelley, supra; In re Coomer*, 8 B.R. 351, 355 (Bankr.E.D. Tenn.1980); *but see In re Conn, supra.* This standard should come as no surprise to the creditor, a major participant in the consumer credit industry. *In re Coomer, supra.*

Based on the facts of this case and the law discussed above, the Court holds that Household Finance has a nonpossessory, nonpurchase-money security interest in the Debtors' stereo and other household items. Accordingly, to the extent that it impairs the Debtors' ability to claim the property as exempt, it may be avoided. Therefore, the Debtors' motion for an order avoiding the creditor's security interest in their personal and household goods is hereby GRANTED.