LOGAN, Circuit Judge.
Russell Fred Billings and Julia Darlene Billings (debtors) appeal the order of the district court, 63 B.R. 717, affirming the *406 bankruptcy court’s denial of their motion pursuant to 11 U.S.C. § 522(f) to avoid a lien held by Avco Colorado Industrial Bank (creditor), and affirming the bankruptcy court’s denial of confirmation of debtors’ Chapter 13 plan. The sole issue on appeal is whether the refinancing of a purchase money loan, by which the old note and security agreement were cancelled and replaced by a new note and security agreement, extinguished creditor’s purchase money security interest in debtors’ collateral, so that debtors may now avoid the lien and claim the collateral as exempt household goods.[1]
Debtors purchased furniture on credit from Factory Outlet Store, giving Factory a purchase money security interest in the furniture. Factory then assigned the obligation to creditor. Thereafter, at the request of debtors, who apparently were having trouble making the payments, creditor refinanced the obligation, reducing debtors’ monthly installment payments from $105.50 to $58.00. The parties cancelled the old note and substituted therefor a new note and security agreement; this note extended the time for repayment and increased the interest rate. The back of the loan application stated that creditor would retain the purchase money security interest. Creditor took no additional collateral as security and loaned only an additional $9.67 to debtors.[2]
Debtors made one payment under the new schedule and then filed for bankruptcy. They then moved, pursuant to 11 U.S. C. § 522(f), to avoid creditor’s lien on the furniture. Creditor objected to this avoidance, and to confirmation of the Chapter 13 plan, arguing that the goods were still secured by a purchase money security interest. After a hearing, the bankruptcy court found that debtors had not satisfied their burden of establishing that the parties intended the subsequent note to extinguish the original debt and purchase money security interest. The court rejected debtors’ legal argument that refinancing automatically extinguishes a purchase money security interest. Accordingly, the court denied the motion to avoid the lien pursuant to § 522(f) and denied confirmation of the debtors’ plan. On appeal, the district court affirmed.
Section 522(f) of the Bankruptcy Code provides in part: “Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is ... a nonpossessory, nonpurchase-money security interest in any ... household furnishings [or] household goods....” 11 U.S.C. § 552(f). Therefore, if the security interest held by creditor retains its status as a purchase money security interest despite the refinancing, then debtors may not avoid the security interest under § 522(f).
The Bankruptcy Code does not define “purchase money security interest.” For this definition, the courts have uniformly looked to the law of the state in which the security interest is created. See, e.g., Pristas v. Landaus of Plymouth, Inc., 742 F.2d 797, 800 (3d Cir.1984); In re Manuel (Roberts Furniture Co. v. Pierce), 507 F.2d 990, 992-93 (5th Cir.1975). The Colorado Uniform Commercial Code defines “purchase money security interest” as follows:
*407 “A security interest is a ‘purchase money security interest’ to the extent that it is:
(a) Taken or retained by the seller of the collateral to secure all or part of its price; or
(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.”
Colo.Rev.Stat. § 4-9-107. This definition does not address the effect of refinancing on a purchase money security interest, and the Colorado state courts have not squarely faced the issue. In a different context, the Colorado Supreme Court has stated the general rule that: “the parties may, by giving a new note for an old one, thereby extinguish the original debt. Whether or not they do so depends upon various circumstances and their intent.” Haley v. Austin, 74 Colo. 571, 223 P. 43, 45 (1924). From it we extrapolate the principle that under Colorado law the intent of the parties determines whether a refinanced debt will retain its purchase money character.
Other circuits, applying the same Uniform Commercial Code (U.C.C.) provisions of other states, have considered directly the effect of refinancing on a purchase money security interest. These circuits have come to differing conclusions. Some hold that refinancing a purchase money loan by paying off the old loan and extending a new one automatically extinguishes the purchase money character of the original loan. See Dominion Bank of Cumberlands v. Nuckolls, 780 F.2d 408, 413 (4th Cir.1985); In re Matthews (Matthews v. Transamerica Financial Services), 724 F.2d 798, 800 (9th Cir.1984) (per curiam); In re Manuel, 507 F.2d at 993. Others hold that the purchase money status of a loan may survive refinancing. See Pristas, 742 F.2d at 801-02; First National Bank & Trust Co. v. Daniel, 701 F.2d 141, 142 (11th Cir.1983) (per curiam). The Tenth Circuit has not ruled on this issue.
Courts holding that refinancing automatically extinguishes the purchase money character of an obligation create an easily applied, bright line rule. To reach this result, they have relied on one or both of two rationales. Some have reasoned that a purchase money security interest simply cannot exist when collateral secures more than its purchase price. See, e.g., In re Manuel, 507 F.2d at 993 (“the purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created, if the vendor is to be protected despite the absence of filing”); In re Norrell (W.S. Badcock Corp. v. Banks), 426 F.Supp. 435, 436 (M.D.Ga.1977); In re Krulik (McLemore v. Simpson County Bank), 6 B.R. 443, 445-47 (Bankr.M.D.Tenn.1980); In re Mulcahy (Mulcahy v. Indianapolis Morris Plan Corp.), 3 B.R. 454, 457 (Bankr.S.D.Ind.1980). Cf. Southtrust Bank of Alabama v. Borg-Warner Acceptance Corp., 760 F.2d 1240, 1242-43 (11th Cir.1985) (purchase money lender’s exercise of after-acquired property and future advance clauses in security agreements transformed purchase money security interest into ordinary security interest). Other courts view the refinancing transaction as creating a new loan to pay off an “antecedent debt.” The Official Commentary to the U.C.C. states that security interests for antecedent debts cannot be purchase money security interests:
“When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value ‘by making advances or incurring an obligation:’ the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.”
U.C.C. § 9-107, Comment 2. Courts relying upon this approach include Matthews, 724 F.2d at 800-01; Nuckolls, 780 F.2d at 413; In re Faughn, 69 B.R. 18, 20-21 (Bankr.E.D.Mo.1986); and Rosen v. Associates Financial Services Co., 17 B.R. 436, 437 (D.S.C.1982). Some courts rely upon both rationales. See, e.g., In re Jones, 5 B.R. 655, 656-57 (Bankr.M.D.N.C.1980).
*408 The problem with the first rationale— that the purchase money security interest cannot exist when collateral secures more than its purchase price — is that it ignores the precise wording of the Uniform Commercial Code. Section 9-107 of the U.C.C. provides that a security interest is a purchase money security interest “to the extent that” the loan enables the debtor to purchase new property. This language would be meaningless if an obligation could never be considered only partly a purchase money debt. See Pristas, 742 F.2d at 801; Geist v. Converse County Bank, 79 B.R. 939, 942 (D.Wyo.1987); In re Russell (Russell v. Associates Financial Services Co. of Oklahoma, Inc.), 29 B.R. 270, 273 (Bankr.W.D.Okla.1983); Stevens v. Associates Financial Services, 24 B.R. 536, 538 (Bankr.D.Colo.1982); In re Conn (Associates Finance v. Conn), 16 B.R. 454, 456-57 (Bankr.W.D.Ky.1982); In re Linklater (Bond’s Jewelers, Inc. v. Linklater), 48 B.R. 916, 919 (Bankr.D.Nev.1985); McLaughlin, “Add On” Clauses in Equipment Purchase Money Financing: Too Much of a Good Thing, 49 Fordham L.Rev. 661, 691-92 (1981); Note, Preserving the Purchase Money Status of Refinanced or Commingled Purchase Money Debt, 35 Stan.L.Rev. 1133,1151-53 (1983). See also In re Matthews, 724 F.2d at 800 n. 3 (“[w]e do not reach the debtors’ alternate contention that collateral cannot secure more than its own value without destroying the purchase money security interest. The weight of authority appears to be against the debtors on this point.”). As the Third Circuit recently stated:
“By overlooking that phrase [‘to the extent’], the ‘transformation’ courts adopt an unduly narrow view of the purchase-money security device. Their reasoning is inconsistent with the Commercial Code, which gives favored treatment to those financing arrangements on the theory they are beneficial both to buyers and sellers.
By contrast, acceptance of the ‘dual-status’ rule, with its pro tanto preservation of purchase-money security interests, is more in harmony with the Code. Tolerance of ‘add-on’ debt and collateral provisions, properly applied, carries out the approbation for purchase-money security arrangements and simplifies repeat transactions between the same buyer and seller.
Moreover, this approach has the positive consequence of a larger number of sales, and the net effect is no more detrimental to the buyer than if a number of purchases had been made from different vendors.”
Pristas, 742 F.2d at 801.
The problem with the second “transformation” rationale — that refinancing by canceling an old note and issuing a new note always constitutes payment of an “antecedent debt” as that term is used in Comment 2 to § 9-107 of the U.C.C. — is that it ignores the possibility that the refinancing merely renewed the debt, rather than creating a new debt. Certainly the prior debt could be satisfied and a new debt created by a novation extinguishing the old purchase money loan. But this should not occur automatically with every amended or renewed note.
In First National Bank & Trust Co. v. Daniel, 701 F.2d 141 (11th Cir.1983) (per curiam), the Eleventh Circuit, applying Georgia law, held that a new note issued to refinance a debt did not constitute a novation. The issue in Daniel was whether refinancing extinguished a note and security interest executed before enactment of the Bankruptcy Code and created a separate and distinct obligation and security interest attaching after the Code’s enactment date. This determination was necessary because, in United States v. Security Industrial Bank, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court held that liens could be avoided under § 522(f) only if they attached after the Code was enacted. The court in Daniel held that a new note which merely extended the payment period and which was col-lateralized by the same property did not constitute a novation under Georgia law; therefore, such a renewal note executed after the Code went into effect did not *409 create a lien eligible for avoidance under § 522(f). 701 F.2d at 142.[3]
District and bankruptcy courts in this circuit, applying their understanding of the laws of most states in our circuit, have rejected the “transformation” rationale, and have held that refinancing does not automatically transform a purchase money security interest. In In re Gibson, 16 B.R. 257 (Bankr.D.Kan.1981), the court addressed the same issue decided in Daniel, and followed Kansas precedent holding that refinancing a note does not automatically extinguish the original note and security interest. See id. at 263. The Gibson court reasoned that because “the paying of the old note by execution of a renewal note is generally just a bookkeeping procedure,” id. at 262, such a transaction would not extinguish the original note or security agreement unless the parties intended for the prior debt to be satisfied and a new debt created. Id. at 264. Decisions in Wyoming, Colorado and Oklahoma have reached the same results. See Geist v. Converse County Bank, 79 B.R. 939 (D.Wyo.1987); Stevens v. Associates Financial Services, 24 B.R. 536, 538-39 (Bankr.D.Colo.1982), and In re Russell (Russell v. Associates Fin. Services Co. of Oklahoma), 29 B.R. 270, 272-74 (Bankr.W.D.Okla.1983). Cf. Schreiber v. Colt, 80 F.2d 511 (10th Cir.1935) (refinancing of chattel mortgage four months before bankruptcy did not constitute a voidable preference, as under Colorado law the refinancing did not create a “new mortgage ... independent of the prior mortgage”). Contra, In re Carnes (Cashion Community Bank v. Carnes), 8 B.R. 599 (Bankr.W.D.Okla.1981).
We agree with and affirm the view stated in these opinions. The basic problem with the automatic “transformation” rule is that it discourages creditors who have purchase money security interests from helping their debtors work out of financial problems without bankruptcy and without surrendering the collateral securing the debt. See Pristas, 742 F.2d at 801; Gibson, 16 B.R. at 265. The instant case is an excellent example. These debtors apparently needed lower monthly payments on their debt. In a “transformation” jurisdiction the creditor could not cooperate without giving up its right to protect its security if debtors filed bankruptcy. Perhaps it could allow debtors to be in partial default without a new note. But that informal arrangement has problems for both debtors and creditor: the defaulting debtors would be subject to foreclosure on their goods at any time; the creditor, if a bank carrying past due loans, would have problems with bank regulators and may be deemed to have agreed to a novation, even without a new note. In the unlikely event that debtors are aware of the “transformation” rule, they would have an incentive to renegotiate or renew in order to invalidate the purchase money lien. We note that debtors here made only one payment on the new note before filing for bankruptcy and seeking to set aside the lien.[4]
The legislative history of § 522(f) is not inconsistent with our conclusion. That history indicates that Congress sought to prevent creditors from overreaching by obtain *410 ing and attaching liens on household possessions already owned by the debtor which could otherwise be exempt from bankruptcy:
“Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor’s belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the form he signs....
The exemption provision allows the debtor, after bankruptcy has been filed ... to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpur-chase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have.”
H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 127, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6088. When the debtor refinances a purchase money loan, the policy supporting the § 522(f) exemption does not apply. The purchase money security interest is in newly purchased goods, not previously owned goods. When a debt secured by a purchase money security interest is refinanced, and the identical collateral remains as security for the refinanced debt, then neither the debt nor the security has changed its essential character. Thus, a creditor who renegotiates a purchase money loan is not committing the type of overreaching that § 522(f) aims to prevent.
The transformation rule not only results in the automatic invalidation of liens under § 522(f), but it also has broader ramifications as to Article 9 priorities:
“[I]n states where no filing is necessary to perfect a purchase money security interest in consumer goods, the creditor who did not file and later loses purchase money status becomes unperfected, see U.C.C. § 9-302, and loses in a priority dispute to other secured creditors who perfected, see U.C.C. § 9-312(5), and to the trustee in bankruptcy. See 11 U.S.C. § 544.
... [I]n states such as Kansas where filing is required to perfect purchase money security interests in consumer goods, Kan.Stat.Ann. § 84-9-302 (Supp. 1980), and in all other situations where filing is necessary to perfect, a creditor who obtained the ‘super priority’ status offered under U.C.C. § 9-312(3) and § 9-312(4) will lose that priority. Therefore the second effect [of the transformation rule] is to jumble priorities among creditors....”
Gibson, 16 B.R. at 265. Thus, our conclusion that refinancing of a purchase money loan does not automatically extinguish the creditor’s purchase money security interest in the debtor’s collateral comports with the scheme of the UCC.
The bankruptcy court in the instant case found that the parties did not intend the new note to extinguish the original debt and security interest. That is also obvious from the renewal note itself and the security interest. The identical collateral remained, almost no new money was advanced, and the document stated specifically an intent to continue the purchase money security interest. Applying a clearly erroneous standard of review, as we must, see In re Mullet (First Bank of Colorado Springs v. Mullet), 817 F.2d 677, 678 (10th Cir.1987), we uphold the bankruptcy and district court’s decision that the debtors could not avoid the creditor’s interest under § 522(f). The judgment of the United States District Court for the District of Colorado is AFFIRMED.

. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8 and 27.1.2. The cause is therefore ordered submitted without oral argument.

. Immediately before refinancing, debtors owed $1087.86 on the first note. After refinancing, debtors owed an additional $103.28: $89.61 for credit life and accident and health insurance, $4.00 for a filing fee, and $9.67 for cash advanced to debtors. Creditor does not claim a purchase money security interest in this addition to principal. The bankruptcy and district courts treated the $1087.86 owing at the time of refinancing as the total purchase money debt, and they applied the one $58 payment made on the new note as reducing the purchase money obligation to $1029.58. Neither party challenges this treatment.

. When a security interest exists pursuant to a security agreement that does not cover future advances, courts have faced the question whether refinancing the original loan constitutes a future advance. In Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 455 F.2d 141, 144-45 (4th Cir.1970) (Maryland law), and In re Cantrill Construction Co. (Commercial Bank of Middlesboro, Kentucky v. Carter), 418 F.2d 705, 707-09 (6th Cir.1969) (Kentucky law), cert. denied, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970), the courts held that refinancing did not extinguish the original obligation and create a new one. Thus, the refinancing did not constitute a "future advance,” and the original security interest survived.

. A change in interest rate on a renewal, as here, does not require finding the original obligation is extinguished. See In re Cantrill Construction Co. (Commercial Bank of Middlesboro, Kentucky v. Carter), 418 F.2d 705, 707 (6th Cir.1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970). Interest fluctuations are normal, especially in these days of widely vacillating rates. An increase in rates does not imply unlawful overreaching by the creditor when debtors have the right to continue the old rates simply by making their payments instead of refinancing.