In re Barry SMILEY and Joan A. Smiley, Debtors.

Barry SMILEY and Joan A. Smiley, Plaintiffs,

v.

FELDMAN FURNITURE COMPANY, Defendant.

Bankruptcy No. 8700302.

United States Bankruptcy Court, D. Rhode Island.

Feb. 19, 1988.

Robert J. Ameen, Pawtucket, R.I., for debtors.

Michael B. Mellion, Gates, Mellion, Moore & Berren, Providence, R.I., for Feldman Furniture Co.

## AMENDED DECISION

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Submitted on memoranda on October 29, 1987, on the debtors' motion to avoid a nonpossessory, nonpurchase money security interest in personal property, pursuant to 11 U.S.C. § 522(f).[1] The defendant, Feldman Furniture Company, objects.

The relevant facts, which are not disputed, are as follows. On November 14, 1984, the Smileys entered into a retail installment agreement with the defendant, Feldman Furniture Company, for the purchase of furniture for $3,776.78. Thereafter, on March 7, 1985, while the first contract was still outstanding, the Smileys purchased additional goods (china) under a second installment agreement, in the amount of $842.70. At that time, the balance of the November 1984 contract ($2,017) was consolidated with the purchase price for the china, resulting in a new total indebtedness of $2,859.70. At issue is whether a purchase money security interest in goods survives, when the original installment contract is consolidated with a later contract for the purchase of additional goods. The debtors contend that Feldman lost its security interest in the merchandise purchased in November 1984, when its agent failed to properly complete the March 7, 1985 contract, by checking the appropriate box. (See Debtors' Exhibit B.) That box, if checked, would have continued the security interest in the previously purchased goods and we would not have been required to write this opinion.

Feldman ignores the problem of the empty box, and instead devotes its energy to a discussion of the technical elements of purchase money security interests. In that regard, we have been provided with a number of cases, from which two rules emerge: The "transformation rule" and the "dual status rule." Feldman urges that we adopt the so-called dual status rule, while the debtors, in reply, urge that the transformation rule should be applied. The competing rules differ, predictably, as to the effect of a subsequent purchase of goods, on a prior purchase money security interest, when the two contracts are consolidated. The dual status rule says that a subsequent security interest in goods "does not terminate a prior purchase money security interest to the extent that the collateral continues to secure its own price." *In re Lanklater*, 48 B.R. 916 (Bankr.D.Nev.1985). Conversely, the transformation rule states that a prior purchase money security interest in goods is lost when consolidated with a second contract for the purchase of other goods. The "transformation" courts reason that when a purchased good secures more than its own price, it loses a "pure" purchase money security interest. *In re Manuel*, 507 F.2d 990, (5th Cir.1975). In addition, Feldman argues that to resolve the question "What constitutes a purchase money security interest?" the Court must look to state law. *See In re Manuel, supra.* The Rhode Island Uniform Commercial Code, in relevant part, defines a purchase money security interest as follows:

6A–9–107—Definitions—"Purchase money security interest."—A security interest is a "purchase money security interest" to the extent that it is

(a) Taken or retained by the seller of the collateral to secure all or part of its price;

Feldman also argues that "the court should look at all of the facts of the particular transaction to determine whether the purchase money character of the transaction has been retained." *In re Russell*, 29 B.R.

---

1. Bankruptcy Code § 522(f)(2)(A) provides in pertinent part:

(f) Notwithstanding any waiver or exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled

under subsection (b) of this section, if such lien is—

....

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods....

270 (Bankr.W.D.Okla.1983). These arguments do not address the issue before the Court.

In this case we are not required to enter the quagmire of the dual status rule, vis-a-vis the transformation rule, and we readily seize upon the opportunity to avoid that excursion. We will, instead, resolve the dispute on a simpler ground. "The relevant question is whether the parties [by their actions] intended to have the original security agreement remain effective, or whether they intended to create a totally new debt and extinguish the old." *In re Stevens*, 24 B.R. 536 (Bankr.D.Colo.1982). Here the intent of the parties is established by reference to Section 5 of the March 7, 1985 contract, which provides:

> If checked, a prior purchase in which a purchase-money security interest was given is consolidated in this contract and we retain that security interest as well until the debt for that merchandise is paid in full.

Clearly, if the parties intended to continue a security interest in the goods purchased in November 1984, this item would have been checked—it was not. Without explanation, Feldman simply says that its employee neglected to check the appropriate box, on their own form.

Although the matter before us is not a truth-in-lending action, that body of law does contain case law relevant to the "clerical error" defense to truth-in-lending actions, and which is identical to the "neglect or inadvertence" relied upon by Feldman. Compliance with the Truth–In–Lending Act requires that a security interest claimed by the creditor be adequately described and that "this fact shall be clearly set forth." Truth in Lending Regulations, Regulation Z, § 226.8(b)(5), 15 U.S.C.A. foll. § 1700. Feldman clearly failed to indicate that it intended to retain a security interest in the furniture purchased under the November 1984 contract, by its omission to check the appropriate box on the March 7, 1985, contract. Feldman's contention that the error was merely a clerical error, is without merit. The failure to properly complete the March 7, 1985 contract was an error of

substance, consequently, the defense of "bona fide error" based on 15 U.S.C. § 1640(c) which provides that "[a] creditor may not be held liable ... if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error," is unavailable to Feldman. "Federal courts have strictly limited this defense to purely and literally 'clerical' errors." *Bizer v. Globe Financial Services, Inc.*, 654 F.2d 1 (1st Cir.1981); *In re Sherman*, 13 B.R. 259 (Bankr.D.R.I.1981); *Ives v. W.T. Grant Co.*, 522 F.2d 749 (2d Cir.1975); *Haynes v. Logan Furniture Mart*, 503 F.2d 1161 (7th Cir.1974), while "[t]he statute clearly places this burden on the defendant creditor." *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296 (5th Cir.1976). In addition, there is no evidence that Feldman has developed any "procedure reasonably adopted to avoid any such error." 15 U.S.C. § 1640(c). "While the error committed here is one that is easy to commit, it is also the type of error that can be easily detected by implementation of an inexpensive screening procedure." *Turner v. Firestone Tire & Rubber Co., supra.* Because Feldman has not alleged or proved that the error was not intentional, or that it developed and maintained a procedure reasonably adapted to avoiding the type of error described, a clerical error defense similar to that provided in 15 U.S.C. § 1640(c), is not available to it.

We conclude, therefore, that the debtors may avoid Feldman's security interest acquired under the November 14, 1984 contract because, as classified in 11 U.S.C. § 522(f)(2)(A), that interest became a non-purchase money security interest when it was consolidated (but not continued) with the March 7, 1985 contract. *In re Matthews*, 724 F.2d 798 (9th Cir.1984), *In re Manuel, supra.* Feldman's security interest in the goods purchased on March 7, 1985, however, may not be avoided by the debtors, since that transaction clearly created a purchase money security interest in

that merchandise,[2] which is not avoidable under § 522(f)(2)(A). The debtors' motion to avoid Feldman's prior security interest is granted, and the motion to avoid the securi-ty interest in the goods purchased on March 7, 1985, is denied.

Enter Judgment accordingly.

---

**2.** The pertinent part of that contract provides: "You are giving us and we are retaining a pur-chase-money security interest in the merchandise being purchased under this contract."

## EXHIBIT B

### FELDMAN FURNITURE COMPANY
23 Summer Street
Pawtucket, Rhode Island 02860

*S. 418*

*# 3698*

## RETAIL INSTALLMENT CONTRACT

| | For Office Use Only |
|---|---|
| | Account No. |

**BUYER(S):**
(Please Print)
Name(s) *Barry Smiley*          **SOCIAL SECURITY NUMBER**
Address *25 St Francis St*   Apt. No.          TEL. NO. Home ( )
City *Pawtucket*   State *RI*   Zip Code          Work ( )

**1. INSTALLMENT SALE:** While we, the Seller, have offered to sell the merchandise and services described in Section 3 for the Cash Price shown in Section 4, you, meaning each person signing this contract as Buyer, have chosen to make this purchase from us on a deferred payment basis, under the terms contained on both sides of this contract, for the Total Sale Price shown in Section 5. You agree that the numerical amounts shown below accurately reflect the details of this purchase and promise to pay the Seller the Total of Payments shown in Section 5 in accordance with the payment schedule in that section.

**2. ASSIGNMENT:** You agree that the rights given to us under this contract will also apply to anyone to whom we may sell or assign it. You agree that this contract may be assigned without notice to you and understand that "we" or "us" as used in this contract may refer to anyone to whom we assign it.

**3. MERCHANDISE AND SERVICES PURCHASED:**

| Description | New or Used | Model/Serial No. | Price |
|---|---|---|---|
| *B52T/H 5'9'F'3FG* | | *Amesbury* | |
| *China* | | *Tax* *795.-* | |
| | | *47.70* | |
| | | *842.70* | |
| | | | |
| | | | |
| | | | |

Description of Trade-In:

**4. ITEMIZATION OF AMOUNT FINANCED:**

1. Cash Price .. $ *842.70*

   Cash Downpayment $ —

   Trade-In $ —

2. Total Downpayment $ —

3. Unpaid Balance of Cash Price

   (Item 1 — Item 2) $ *842.70*

4. Net Balance of Prior Contract

   $_____ (after refund credit) *2017.-*

5. Combined Balance

   (Item 3 + Item 4) *2859.70*

6. Amount Financed (Item 5) · $ *2859.70*

### 5. KEY TRUTH IN LENDING ACT DISCLOSURES:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf: | Total of Payments The amount you will have paid after you have made all payments as scheduled: | Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| *21* % | $ *838.30* $ *2889.70* | *2859.70* | $ *3698.-* | $ *3698* |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| *29* | *125.-* | Monthly, beginning: *April 25th* ☐ If checked, first payment due date is estimated |
| *1* | *73* | |

**Security:**
You are giving us and we are retaining a purchase-money security interest in the merchandise being purchased under this contract.
☐ If checked, a prior purchase in which a purchase-money security interest was given is consolidated in this contract and we retain that security interest as well until the debt for that merchandise is paid in full.

**Prepayment:** If you pay off early you may be entitled to a refund of part of the finance charge.
See contract terms below and on reverse side for additional information about nonpayment, default, required repayment in full before the scheduled date and prepayment refunds.

**6. ADDITIONAL DEFAULT AND PREPAYMENT PROVISIONS:**
If we accept any monthly payment after the date it is due, that does not affect the due dates of any other amounts under this contract, nor will it act as an extension of time for payments of any amounts then remaining unpaid. It will also not modify any of our rights under this contract.
If you fail to pay any monthly payments when due, or break any other terms of this contract, we may demand immediate payment of the entire balance, less the finance charge refund referred to below. We may begin a lawsuit for collection of this balance and you agree to pay reasonable attorney's fees and court costs if this contract is referred to an attorney for collection.
If you pay your total balance in full at any time before the last payment date of this contract or if you default and we demand full payment, you will receive a refund credit to your account of the unearned finance charge, calculated according to a formula called the Rule of 78's. No refund credit of less than $1 will be made.

**NOTICE TO THE BUYER:** 1. Do not sign this agreement before you have read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this agreement. 3. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.

THIS AGREEMENT SHALL NOT BE BINDING OR ENFORCEABLE UPON SELLER UNTIL AFTER APPROVAL OF BUYER'S CREDIT.

Buyer acknowledges receipt of a signed copy of this RETAIL INSTALLMENT CONTRACT.

DEALER SIGN HERE *Feldman Furn Co.* (L.S.)

By *Paul Cahalan* (AUTHORIZED REPRESENTATIVE—TITLE) Date *3/7/8*

Seller's Address _____

Signed X *Barry Smiley* (L.S.) Date *3/7/8*

BUYER(S) SIGN HERE Signed X *Joan A. Smiley* (L.S.) Date _____

Signed *S. Cahalan* (WITNESS) (L.S.) Date *3/7/85*