**In re Vergel S. ADOPTANTE and Julie Adoptante, Debtors.**

**Bankruptcy No. 91–12538.**

United States Bankruptcy Court, D. Rhode Island.

April 20, 1992.

Russell D. Raskin, Raskin & Berman, Providence, R.I., for debtors.

Sherry A. Goldin, Pucci & Goldin, Inc., Providence, R.I., for AVCO Financial Services of Rhode Island, Inc.

Jason D. Monzack, Kirshenbaum & Kirshenbaum, Cranston, R.I., trustee.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on January 30, 1992, pursuant to 11 U.S.C. § 522(f)(2)(A),[1] on the motion of Debtors Vergel S. Adoptante and Julie Adoptante to avoid a security interest held by creditor Avco Financial Services of Rhode Island, Inc. At issue is whether refinancing of a loan secured by a purchase money security interest in household goods extinguishes the purchase money nature of the loan.

### BACKGROUND

On August 28, 1989, Vergel S. and Julie Adoptante (Debtors) purchased a bedroom set and living room ensemble from Alperts Furniture for $5,113.42. They made a

---

**1.** 11 U.S.C. § 522(f)(2)(A) provides, in pertinent part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, ... that are held primarily for the personal, family or household use of the debtor or a dependent of the debtor.

$500.00 down payment and financed the balance of $4,613.42 through Avco Financial Services of Rhode Island, Inc. (Avco). As part of the transaction, the Adoptantes executed a "Customer Credit Application" which incorporated a Retail Installment Sales Agreement. Relevant to this dispute is the following language:

> The Holder shall have and retain a purchase money security interest in merchandise purchased under this Agreement until the indebtedness corresponding to that merchandise, determined in accordance with applicable law, shall be paid in full.

On or about November 2, 1990, the Adoptantes approached Avco and applied for an additional loan in the amount of $1,500.00, which Avco approved. The second loan was consolidated with Debtors' prior obligation to Avco, and although it is a disputed matter, we find that the consolidation was done on Avco's initiative, for its own business advantage.

The documentation for the consolidated loan is different than for the August 28, 1989 extension of credit, in that it consists of: (1) a one-page document incorporating a Federal Disclosure Statement, Promissory Note and Security Agreement; and (2) a UCC–1 financing statement.

The upper portion of the November 2, 1990 contract, entitled "Federal Disclosure Statement," identified the lender as "Avco Loan and Investment Bank;"[2] stated that the amount financed was $6,350.25; and provided that Debtors were giving a security interest in "[c]ertain exempt [sic] household goods and other consumer personal property per attached list." However, no list was attached. *Id.*

The section entitled "Itemization of Amount Financed" indicated that $1,497.41 in cash was given directly to the borrowers; $2769.20 was paid on "Account 10435667:" $1859.40 was paid on "Account # 249504724;" and the remainder, $722.24, was allocated to filing fees and credit life insurance. *Id.* (Ron Wilson, Avco's branch manager who closed the loan, testified that 9–digit account numbers correspond to loans for goods, and that 10–digit account numbers signify personal loans.)

The bottom section of the form, entitled "Security Agreement," was blank. It contains, *inter alia,* spaces for parties to indicate that they are granting a security agreement in "personal property described above, ... and per the attached list," and in "proceeds and products" of the collateral, and requests borrowers to fill in the replacement value of the collateral, in their own handwriting. Avco's Mr. Brown says this section was left incomplete "by mistake." The UCC–1 financing statement lists the individual pieces of the living room and bedroom sets purchased in August 1989, plus "1 RCA–TV," as collateral. "Proceeds" and "products" were not included in the UCC–1. *Id.*

The Adoptantes filed a Chapter 7 petition on October 2, 1991, and claimed an exemption under 11 U.S.C. § 522(f)(2)(A) in all of their furniture and household goods. Avco claims a purchase money security interest in the furniture listed on the UCC–1, arguing that its lien is not avoidable under 11 U.S.C. § 522(f)(2)(A), since the original security interest retained its purchase-money character notwithstanding the November 2, 1990 loan consolidation.

## DISCUSSION

The Bankruptcy Code does not define "nonpurchase-money security interest" or "purchase-money security interest" (PMSI), and Avco correctly points out that the Court must look to state law for definitions of these terms. *See In re Manuel,* 507 F.2d 990 (5th Cir.1975). The Rhode Island Uniform Commercial Code defines a PMSI as follows:

> **6A–9–107. Definitions—"Purchase money security interest."**—A security interest is a "purchase money security interest" to the extent that it is

---

**2.** This contract identified the lender as "Avco Loan and Investment Bank." The original loan was made by "Avco Financial Services of Rhode Island, Inc." The parties have not raised this distinction; however, Avco's argument for the continuation of the purchase money security interest is weakened considerably if the refinancing was performed by a different entity.

(a) Taken or retained by the seller of the collateral to secure all or part of its price...."

To our knowledge, this section of the Uniform Commercial Code has not been construed by Rhode Island state or federal courts with respect to the issue presented here. Other courts, however, have addressed the issue in one of two ways.

■ Avco urges this Court to apply the so-called "dual-status rule" to the instant facts, and to find that the purchase money nature of its security interest survived the November 2, 1990 consolidation. The dual-status rule, which has been adopted in several Circuits, provides that refinancing or consolidation does not automatically extinguish the purchase money character of a prior security interest in goods. Rather, after refinancing, the new security interest has a "dual status": purchase money to the extent that the later loan is allocable to the cost of debtor's initial purchase, and non-purchase money as to the balance. *See In Re Billings*, 838 F.2d 405 (10th Cir. 1988); *In Re Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797, 800 (3d Cir.1984). Other courts have adopted the more severe position that refinancing a purchase money loan automatically transforms the purchase money character of the original security interest to non-purchase money (the so-called "transformation rule"). *See, e.g., Dominion Bank of the Cumberlands v. Nuckolls*, 780 F.2d 408, 413 (4th Cir.1985); *In Re Matthews*, 724 F.2d 798, 800 (9th Cir.1984).

This Court has previously declined to take a side in the "transformation" versus "dual-status" debate, where the parties' intent could be determined from the record. If it is properly ascertainable, we are interested in whether the parties intended to have the original security agreement remain in force, or whether they intended to create a totally new debt and security interest. *In re Stevens*, 24 B.R. 536 (Bankr. D.Colo.1982). In *Smiley v. Feldman Furniture Co. (In re Smiley)*, 84 B.R. 6 (D.R.I. 1988), we held that a lender's failure to signify or register (by checking a box on its own standard form contract) its intention to continue its purchase money security interest in goods financed by an earlier loan to the same party, after consolidation of the old and the new obligations, resulted in the extinguishment of the purchase money security interest.

Here, the intent of the parties is easily determined by reference to the Federal Disclosure Statement, Promissory Note and Security Agreement. Had Avco intended to preserve its purchase money security interest, at a minimum it should have: (1) appended a list of the collateral, as per the Disclosure Statement; (2) checked off the "granting clause" of the Security Agreement; and (3) included the replacement value of the collateral. Avco's explanation that its agent intended, but forgot, to do these things does not bolster its claim of intent to preserve its purchase money security interest. Also, the Debtors' execution of, and the filing of a financing statement naming Avco as the secured party supports the conclusion that the purchase money security interest was terminated, since such an interest in consumer goods is perfected against (most) third parties, without filing. We note that no financing statement was filed in connection with the initial purchase.

Accordingly, based upon all of the foregoing, we conclude that the purchase money security interest acquired by Avco under the August 1989 contract may be and hereby is avoided because, as classified in 11 U.S.C. § 522(f)(2)(A), said interest lost its purchase money security status when the loan was refinanced on November 2, 1990.

Enter Judgment consistent with this opinion.