**In re Dale Lawrence SNIPES & Melba Darlene Snipes, Debtors.**

**Bankruptcy No. 88–00969–C–13.**

United States Bankruptcy Court, W.D. Missouri, C.D.

June 20, 1988.

Gwendolyn Froeschner, Columbia, Mo., for debtors.

Rick Fink, Kansas City, Mo., Chapter 13 Trustee.

**MEMORANDUM OPINION**

FRANK W. KOGER, Bankruptcy Judge.

Debtors signed a note dated August 26, 1987 giving Kentucky Finance Company a purchase money security interest (pmsi) in a sofa sleeper and two chairs in consideration for a loan of $1,227.00. On October 8, 1987, Debtors obtained an additional loan from Kentucky Finance Company for $1,296.00. These two loans were combined on February 9, 1988, evidenced by a new note and secured by the sofa sleeper, the two chairs and other personal property of the Debtors. A financing statement was filed that same day.

Debtors filed bankruptcy under Chapter 7 of the Bankruptcy Code on March 3, 1988, and later converted to Chapter 13. A hearing was held on June 2, 1988, addressing Debtors' objection to the claim of Kentucky Finance Company that it has a pmsi in the sofa sleeper and the two chairs. At the hearing, the parties agreed to submit this matter to the Court on stipulation of the facts. Based upon that record, and for the reasons set forth in the Memorandum Opinion it is

ORDERED that the lien of Kentucky Finance Company on debtors' sofa sleeper and two chairs is nonpossessory, nonpurchase-money and is therefore subject to avoidance by debtors pursuant to 11 U.S.C. § 522(f).

## ISSUE

Kentucky Finance Company does not dispute that their lien was nonpossessory. The question at issue here is whether the lien of Kentucky Finance Company is a purchase money lien in which case it could not be avoided by Debtors under the lien avoidance section of the Code.

## LAW

Section 522(f)(2)(A) of the Bankruptcy Code permits a debtor to avoid a nonpossessory, nonpurchase-money security interest in household furnishings, household goods, or appliances which are primarily for the personal, family, or household use of the debtor or a dependent of the debtor to the extent that the lien impairs an exemption to which the debtor otherwise would be entitled.

The Bankruptcy Code does not define "purchase money security interest", therefore, we look to state law. *See In re Manuel*, 507 F.2d 990, 992 (5th Cir.1975). Missouri law defines same as: "A security interest is a 'purchase money security interest' to the extent that it is (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used". Mo.Ann.Stat. § 400.9–107 (Vernon 1988). A financing statement need not be filed to perfect a pmsi in consumer goods. Mo. Ann.Stat. § 400.9–302(1)(d) (Vernon 1988).

Courts appear to be divided on the issue of whether the character of a pmsi changes upon the consolidation of a purchase money security agreement and another agreement. Some courts have adopted the "transformation rule", that if an item of collateral secures not only its own purchase price but also that of other items, the security interest that existed before the "add on" procedures is transformed into nonpurchase money status. *See Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797, 800 (3rd Cir.1984); *citing, In re Manuel*, 507 F.2d 990 (5th Cir.1975); *In re Norrell*, 426 F.Supp. 435 (D.C.Ga.1977); *In re Krulik*, 6 B.R. 443 (Bkrtcy.M.D.Tenn.1980); *In re Scott*, 5 B.R. 37 (Bkrtcy.M.D.Pa.1980); *In re Mulcahy*, 3 B.R. 454 (Bkrtcy.S.D.Ind. 1980).

Other courts are of the opinion that security interests may possess dual statuses "and that the presence of a nonpurchase-money security interest does not destroy the purchase-money aspect". *Pristas,* at 800. This view derives its support from the Uniform Commercial Code § 9–107 which provides that a security interest is a pmsi "to the extent" it is taken or retained by the seller of the collateral to secure all or part of its price. "Thus, a purchase-money security interest in a quantity of goods can remain such 'to the extent' it secures the price of that item, even though it may also secure the payment of other articles. *See In re Breakiron*, 32 B.R. 400 (Bkrtcy.W.D.Pa.1983); *In re Moore*, 33 B.R. 72 (Bkrtcy.D.Ore.1983); *In re Gibson*, 16 B.R. 257 (Bkrtcy.D.Kan.1981) ..." *Pristas*, at 801.

## THE DUAL APPROACH

The question in *Pristas* was whether a pmsi in consumer goods survived when the debt was consolidated with that incurred for subsequent purchases. The court held that the "add on" of both collateral and debt did not eliminate the purchase money character of the security interest in the original purchases. The court further held that where a debt secured by a purchase money security interest in consumer goods was consolidated with that incurred for subsequent purchases the allocation provisions of the state statute controlled, thus, the purchase money security interest in goods that also secured later payments to the extent the original items secure the unpaid part of their own price the pmsi is retained.

The *Pristas* court followed the dual status view and rejected the transformation rule because of the support of the language in the Uniform Commercial Code and because the dual status approach is consistent with the Code policy of approbation for purchase money security arrangements and simplifies repeat transactions between the same buyer and seller. The court stated, "[t]o apply the 'dual-status'

doctrine, it is necessary to determine the extent to which a particular item continues to secure its own price and the extent to which payment of other purchases is affected. If that allocation can be made, the purchase-money security interest survives and will not be avoided. The creditor's interest will be nullified under § 522(f)(2) only to the extent that it is nonpurchase-money security". *Pristas*, at 801.

## THE TRANSFORMATION APPROACH

In *In re Matthews*, 724 F.2d 798 (9th Cir.1984), the issue before the court was whether the refinancing of a loan *by issuing a new loan* destroyed the purchase money nature of a security interest for purposes of 11 U.S.C. § 522(f). In this case the creditor decided to issue a new loan and pay off the old loan rather than to extend the payments on the old loan. The consideration for creditor's benefit in converting a delinquent loan into a current loan on its books was the sacrifice of its purchase money security interest, taking instead a security interest (non-purchase money) in the property to secure the new loan.

## MISSOURI'S APPROACH

The Eastern District of Missouri Bankruptcy Court in *In re Faughn*, 69 B.R. 18 (Bkrtcy.E.D.Mo.1986), held that "... refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral ..." *Faughn* at 20. The *Faughn* court recognized the conflict in this area and decided to follow the Ninth Circuit in *Matthews*, which favored the transformation approach.

The Bankruptcy Court in *In re Jackson*, 9 UCC Rep.Serv. 1152 (Bkrtcy.W.D.Mo. 1971) stated that "... it does not necessarily follow that once a purchase money security interest always a purchase money security interest". *Jackson*, at 1156. The creditor's contention that it was a secured creditor failed because "its purchase money security interest in the consumer goods lost its identity as such when it attempt[ed] to claim the goods as security for the entire balance due and owing under the revolving charge agreement without further perfection by way of a filed financing statement ..." *Id.* at 1156.

## DISCUSSION

This Court believes a distinction can be made between the *Matthews* "transformation" approach and the *Pristas* "dual" approach. The question to be decided in *Matthews* was whether the pmsi survived the pay out of the original loan and applied to a completely new loan. In this event, the court found that the purchase money character of the original loan did not carry over to the new loan. The Court in that case, however, does not reach the debtors' alternate contention that collateral cannot secure more than its own value without destroying the purchase money security interest. In a footnote the Court stated it believed the weight of authority appears to be against the debtors on this point. *See generally, McLaughlin,* " 'Add On' Clauses in Equipment Purchase Money Financing: Too Much Of A Good Thing," 49 Fordham L.Rev. 661 (1981). *Matthews*, at 800, n. 3. Similarly, *Faughn* based its decision on a payoff provision in a second contract to defeat the character of the purchase money agreement because then the second loan was not used by Debtors to acquire rights in the collateral and thus was not purchase money.

In *Pristas*, the question was somewhat different, however. The question in that case was whether a supplement to the original loan extinguished the purchase money character of the original loan. The court held that the purchase money character survived the add on provision as long as the character of the initial loans could be determined.

Similarly, the fact situations in *In re Norrell*, 426 F.Supp. 435 and *In re Manuel*, 507 F.2d 990 are unique in that the lender never had a valid pmsi to begin with because of the "add on" clause in the initial agreement giving the lender security in items other than those being purchased.

*In re Manuel* involved an add-on clause in a security agreement under which the debtor never completely paid off his indebtedness before purchasing another item on credit and adding it to that indebtedness never gained title to anything until the entire debt was paid, and the creditor thus retained a security interest in all of the property so purchased to secure only the more recent purchases. The court held that because the security agreement purported to make collateral secure debt other than its own price, it was not a purchase money interest entitled to be perfected without filing. *Id.* at 993. " 'Add-on' contracts do not fall into the category of a 'purchase money security interest' for the simple reason that the items of collateral described in the contract stand as security not only for their own purchase price, but for the balance due on the purchase of other items ..." (citation omitted) *Scott,* at 39. However, transformation cases state that "there is no reason to apply a different rule to security agreements executed as part of refinancing loans or consolidations of loans covering consumer goods". *Mulcahy,* at 457.

The court in *In re Staley,* 426 F.Supp. 437 (M.D.Ga.1977), agreed with the holding in *Manuel* that a security agreement which purported to make collateral secure debt other than its own price, it was not a pmsi entitled to be perfected without filing. The collateral must secure only debt representing its price. *Staley* did hold however, that a security agreement specifying a first-in-first-out method of applying payments retained the purchase money character of a security interest in a stereo.

## ANALYSIS

Although this Court finds it easy to draw distinctions between this case and other cases which advocate the "transformation" approach because the combination of the two previous loans to Debtors did not provide for the payoff of Debtors' obligation on the purchase money agreement for an extension of new credit and because Kentucky Finance Company did initially have a valid pmsi in the sofa and chairs, it would appear that the law in this district would support an adoption of the "transformation" even in the circumstances before us. The general rule arising out of the transformation cases is that the consolidation of several existing obligations secured by pmsi's into a single obligation secured by all of the collateral transforms the pmsi's into nonpurchase money security interests. Creditors may always protect their secured position by extending or renewing their pmsi loan rather than rolling over totally unrelated debts into one new package. Furthermore, the "transformation rule" obviates the potential of an accounting problem. Had debtors paid one-half of the new balance after consolidation, what portion of same should be attributed to the pmsi balance and what portion to the non-purchase money balance?

Missouri has adopted the transformation approach in the case of *Faughn* and *Jackson.* Although, as discussed above, this Court believes *Faughn* and several other transformation approach cases are distinguishable from the case at hand, *Jackson* makes it clear that Missouri follows the transformation approach even in fact situations such as this one especially in light of the fact that the consolidated agreement appears to make the sofa and chairs security for the amount of both of the previous loans and does not provide for any separate allocation of payments. The agreement does not provide that the sofa and chairs are just security for the remaining balance due on the first note and thus the purchase money character of the security interest has changed in the new agreement. Kentucky Finance Company's pmsi became a nonpurchase money security interest upon the consolidation of the loans, and would be subject to lien avoidance pursuant to § 522(f).

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052 Rules of Bankruptcy.