In re Edmund Roy **GILLIE** and wife, Doris Lynette Gillie, Debtors.

Edmund Roy **GILLIE** and wife, Doris Lynette Gillie, Plaintiffs,

v.

**FIRST STATE BANK OF MORTON, TEXAS, Defendant.**

Bankruptcy No. 588–50026–7.
Adv. No. 588–5025.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Feb. 17, 1989.

George H. Nelson, Law Offices of George H. Nelson, P.C., Lubbock, Tex., for debtors.

Louis M. Ratliff, Jr., Kirby, Ratliff & Greak, Inc., Littlefield, Tex., for First State Bank of Morton.

MEMORANDUM OF OPINION ON
PURCHASE MONEY LIEN

JOHN C. AKARD, Bankruptcy Judge.

*Issue*

Does refinancing a purchase money loan by issuing a new loan destroy the purchase

money nature of the original security interest for purposes of Bankruptcy Code § 522(f)? [1]

### Facts

First State Bank, Morton (Bank), advanced cash to Mrs. Gillie to purchase household furniture. On June 19, 1985, Mrs. Gillie signed a note in the amount of $6,370.92 payable to the Bank in 36 monthly installments of $176.97 each. The note represented $4,600.00 paid to Mrs. Gillie, credit life and credit health and accident premiums in the amount of $300.54 and $1,407.38 interest at 17.92% per annum. The note listed "Table & Chairs" as security for the loan. Mrs. Gillie signed a security agreement on the $6,370.92 note listing the collateral as: "2 Arm Chairs, 4 Side Chairs, 1 Table, 1 Entertainment Center" and classified the furniture as Consumer Goods. The Bank issued Cashier's Check No. 88992 dated June 19, 1985, payable to Doris Gillie, in the amount of $4,600.00. Mrs. Gillie used the funds to purchase the table, chairs, and entertainment center from Spears Furniture. The Bank filed a financing statement signed by Mrs. Gillie in the office of the County Clerk of Lamb County, Texas, on June 25, 1985. The financing statement listed the collateral as shown on the security agreement.

On April 21, 1986, Mr. Gillie signed a note in the amount of $6,166.02, including interest at 17.77% per annum payable to the Bank in 42 monthly installments of $146.81 each. The amount financed included credit life and credit health and accident premiums in the amount of $316.90. The noted listed "Table, Chairs, and Entertainment Center" as security for the loan. The note also recited the June 19, 1985 security agreement as security for the loan. Mr. Gillie signed no Security Agreement or Financing Statement. Although the Bank stamped the note signed by Mrs. Gillie

"PAID BY RENEWAL", the note signed by Mr. Gillie did not recite that it renewed or extended the note signed by Mrs. Gillie.

On February 19, 1987, Mr. Gillie executed a note in the amount of $5,498.40, including interest at 12.51% per annum, payable to the Bank in 60 monthly installments of $91.64 each. The amount financed included credit life and credit health and accident premiums in the amount of $338.27. The note recited that it was secured by the June 19, 1985 security agreement and Table, Chairs and Entertainment Center. It also recited "Renew: 3245 1", but there is no number 3245 1 on either of the previous notes. Again, Mr. Gillie signed no Security Agreement or Financing Statement. The note of April 21, 1986 was stamped "Paid by Renewal."

The parties stipulated that all three notes related to the same transaction and that the Bank advanced no new funds and added no new collateral when the second and third notes were given. The Debtors seek to avoid the Bank's claimed purchase money security interest in the household goods.

### Discussion

Section 522(f)(2)(A) permits a debtor to avoid a non-possessory non-purchase money security interest in household furnishings, household goods, or appliances which are primarily used for the personal family or household use of the debtor or a dependent of the Debtor to the extent that the lien impairs an exemption to which the Debtor otherwise would be entitled. The Debtors selected the Federal Exemptions under § 522(d).[2]

The Bankruptcy Code does not define "purchase money security interest", therefore, we must look to state law. See *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990, 992 (5th Cir.1975). Tex. Bus. & Com.Code Ann. § 9.107 (Vernon

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code. The parties submitted the issue on stipulations and briefs.

**2.** A debtor who selects the Federal Exemptions may take advantage of § 522(f)(2)(A), but a

debtor who selects the State Exemptions under § 522(b)(2)(A) may not take advantage of § 522(f)(2)(A) because the Texas statute does not exempt property upon which there is a valid lien. *Allen v. Hale Co. State Bank (In re Allen)*, 725 F.2d 290 (5th Cir.1984).

Supp.1989) defines a purchase money security interest as follows:

A security interest is a "purchase money security interest" to the extent that it is

(1) taken or retained by the seller of the collateral to secure all or part of its price; or

(2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

There is no question but that the Bank qualified as the holder of a purchase money security interest with respect to the note, security agreement and financing statement signed by Mrs. Gillie. However, the second and third notes are another matter.

Prior to the enactment of the Uniform Commercial Code by the Texas Legislature, the substitution of a new note for a note secured by a chattel mortgage did not discharge the mortgage unless the parties intended discharge. The parties' intent had to be evidenced by something other than the substitution. 51 Tex.Jur.2d Rev., Part 2, *Secured Transactions* § 280 (1963). A renewal of the debt by implication resulted in renewal of the security—unless there was evidence of contrary intent. The lien, once executed, remained in force during the life of the debt. *Id.* (citing *Ploeger v. Johnson,* 26 S.W. 432 (Tex.Civ.App.—Dallas 1894, no writ) and cases ff.) A mere renewal did not affect the lien. However, a renewal could amount to a novation. If, for sufficient consideration, the parties executed a renewal intending a satisfaction of the old debt or lien, it had that effect and the rights of the parties were governed by the new contract. *Id.* (citing *Helmke v. Uecker,* 161 S.W. 17 (Tex.Civ.App.—Austin 1913, no writ).

While the Fifth Circuit Court of Appeals has not spoken to this precise question, it has been squarely addressed and answered by the Ninth Circuit Court of Appeals in *Matthews v. Transamerica Financial Services (In re Matthews),* 724 F.2d 798 (9th Cir.1984) *(per curiam).* The Matthews purchased a piano and a stereo with money borrowed from Transamerica Financial Services (Transamerica). The collateral listed as securing the loan included the piano, the stereo, and other household goods and other personal property of the Matthews. Subsequently, Transamerica refinanced the loan for a longer term at a lower monthly payment and issued a new loan. The Matthews used the new loan to pay off the old and, additionally, received $63.14 in cash and paid insurance charges of $279.23. The Matthews filed a petition for bankruptcy in November 1980. When Transamerica filed for relief from the Automatic Stay to repossess the collateral, the Debtors cross-complained to avoid Transamerica's lien. The Bankruptcy Court decided in favor of the Debtors on the ground that the remaining security interest was not purchase money. The Ninth Circuit Bankruptcy Appellate Panel reversed, holding that a security interest existed in the goods to the extent of the remaining indebtedness attributable to the purchase price.

The Ninth Circuit reviewed the Bankruptcy Appellate Panel's interpretation of § 522(f) de novo as a question of law and reversed. *Id.* at 799. The Court decided that the transaction delineated above did not meet the definition of a purchase money security interest as contained in U.C.C. § 9–107(b). Although Transamerica gave purchase money value when it initially loaned money to the Debtors for the purchase of the piano and the stereo, the second loan was valued to enable the Debtors to pay off the first loan to receive cash and to pay insurance charges. *Id.* at 800. The Court cited with approval *In re Jones,* 5 B.R. 655 (Bankr.M.D.N.C.1980). In *Jones,* the Bankruptcy Judge stated: "The purpose of the renewal note was to payoff (sic) the original note, an antecedent debt. The purchase money character of the security interest was extinguished when the proceeds from the first renewal note were used to satisfy the original note." *Id.* at 657.

The Circuits are split on the issue. Agreeing with *Matthews, supra,* are courts from the 1st, 4th, 6th, 8th, 9th and 11th Circuits. *See,* e.g., *Dominion Bank of Cumberlands, N.A. v. Nuckolls,* 780 F.2d

408 (4th Cir.1985) (holding that under Virginia law, a bank's security interest, which secured a loan made to refinance pre-existing debt, was a non-possessory, non-purchase-money security interest); *Hipps v. Landmark Financial Services of Georgia, Inc. (In re Hipps)*, 89 B.R. 264, 18 B.C.D. 57 (Bankr.N.D.1988) (holding that in Georgia, pursuant to § 9–107 of the U.C.C., refinancing of a promissory note transforms the obligation, thereby destroying purchase money nature of the security interest. Therefore, the creditor lost its purchase money security interest [pmsi] in a television set when the loans were consolidated, and lien was avoidable. *Id.* 89 B.R. 264, 18 B.C.D. 58); *Smiley v. Feldman Furniture Co. (In re Smiley)*, 84 B.R. 6 (D.R.I.1988) (holding that a creditor's pmsi in goods sold to debtors did not survive consolidation of the original installment contract with a later contract for the purchase of additional goods); (citing *In re Matthews, supra,* and *In re Manuel, supra*); *In re Wandler*, 77 B.R. 735 (Bankr. D.N.D.1987) (holding that under North Dakota law consolidation of a note secured by a pmsi in farm machinery with other goods resulted in a novation, destroying the creditor's pmsi); *In re Challinor*, 79 B.R. 19 (Bankr.D.Mont.1987) (holding that a note, which was a consolidation of the debtors' previous notes, did not give rise to a pmsi); *Franklin v. ITT Financial Services (In re Franklin)*, 75 B.R. 268 (Bankr.M.D.Ga. 1986) (holding that under Georgia law a creditor's refinancing of a promissory note destroyed the purchase money nature of the creditor's security interest in a wall unit which served as collateral); *In re Faughn*, 69 B.R. 18 (Bankr.E.D.Mo.1986) (holding that the creditor's refinancing of an old loan at the time a new loan was executed extinguished the purchase money character of the original loan because proceeds of the new loan were not used to acquire rights in collateral and, thus, the creditor's liens in all but the most recently purchased household goods were avoidable); (disagreeing with *Pristas, infra*); *In re Janz*, 67 B.R. 553 (Bankr.D.N.D.1986) (holding that where a debtor borrowed money from a third party to pay off the holder of a pmsi in the collateral, the effect was to extinguish the pmsi. The court noted that a finding that the lender enabled the debtor to acquire rights in the collateral as § 9–107 requires may be possible where a non-selling lender has given value prior to the time the debtor acquires rights in the collateral); *In re Mason*, 46 B.R. 119 (Bankr.E.D.Mich.S.D.1985) (holding that under Michigan law, when debtors paid off the initial loan with the proceeds of refinancing, the creditor's pmsi in stereo expired); *Booker v. Commercial Credit Corp. (In re Booker)*, 9 B.R. 710 (Bankr.M. D.Ga.1981) (holding that where a security agreement contained collateral other than collateral for which creditor advanced funds to debtor, since it secured antecedent debts as well as new debt and the agreement provided that the security interest secured payment and performance of the debtors' present and future debts to the creditor, the creditor did not have a pmsi and the debtors could avoid the creditor's lien on collateral claimed as exempt).

Disagreeing with *Matthews* are courts from the 3rd, 8th, 9th and 10th Circuits. *See, e.g., Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797 (3rd Cir.1984) (holding that Pennsylvania law permits retention of the purchase-money security interest in goods that also secure later payments to extent the original items secure the unpaid part of their own price); *Billings v. Avco Colorado Industrial Park (In re Billings)*, 838 F.2d 405 (10th Cir.1988) (holding that under Colorado law, refinancing of a purchase money loan, whereby an old note and security agreement were canceled and replaced by a new note and security agreement, did not automatically extinguish the creditor's pmsi in the debtors' furniture. The parties did not intend the new note to extinguish the original debt and security interest in that identical collateral remained, almost no new money was advanced, and the document specifically stated an intent to continue the pmsi); *In re Hansen*, 85 B.R. 821 (N.D.Iowa 1988) (holding that post–1978 refinancing of a debt did not constitute a novation, thus debtor could not avoid liens on equipment it owned prior to the 1978 enactment of the Bankruptcy

Code where no new money was advanced, no additional security was encumbered, and varying the term of years and interest rates was done to benefit the debtor); *In re Hemingson*, 84 B.R. 604 (Bankr.D.Minn. 1988) (holding that under Minnesota law, refinancing and consolidation of purchase money loans did not destroy their "purchase money" character for bankruptcy "lien avoidance" purposes); *Geist v. Converse County Bank (In re Geist)*, 79 B.R. 939 (D.Wyo.1987) (holding that a creditor's refinancing by renewal does not destroy a pmsi to the extent that the balance remaining on the original loan is transferred to the renewal note); *Bond's Jewelers, Inc. v. Linklater (In re Linklater)*, 48 B.R. 916 (Bankr.D.Nev.1985) (holding that a purchase money security in jewelry was not lost when the perfected purchase money security interest was consolidated with a subsequent retail installment contract); *In re Schwartz*, 52 B.R. 314 (Bankr.E.D.Pa. 1985) (holding that a purchase-money security interest did not lose its character as such for purposes of lien avoidance when debtor and creditor effected a novation of the loan agreement).

In *Manuel, supra,* the Fifth Circuit Court of Appeals considered a purchase money agreement between a buyer of household furniture and a seller. Since the agreement failed to indicate the order in which the purchases were paid off and the amounts still due on each item and secured by the paid-up items, the Court found that the agreement attempted to make collateral secure debt other than the price of that collateral. As a result, the statutory exception from the U.C.C. filing requirement did not apply and, since the seller did not perfect either by filing or retaining possession, it did not have a pmsi. The *Manuel* case is distinguishable from the instant case, however, because in *Manuel* the Court dealt with a revolving loan or "add-on" type situation, rather than a refinancing of the original purchase.

In re *Snipes*, 86 B.R. 1006 (Bankr.W.D. Mo.C.D.1988) presents a lucid analysis of the two lines of thought on the issue: (1) the "transformation rule," that if an item of collateral secures not only its own purchase price, but also that of other items, the security interest that existed before the "add on" procedures is transformed into nonpurchase money status, and (2) the "dual status" approach, that the presence of a nonpurchase money security interest does not destroy the purchase-money aspect. *Id.* at 1007. In *Snipes*, the Bankruptcy Court adopted the transformation approach because the consolidated agreement made the original collateral security for both the original loan and a second loan and did not provide for any separate allocation of payments. The court reasoned that since the second agreement did not provide that the collateral was just security for the remaining balance due on the first note, it changed the purchase money character of the security interest.

### CONCLUSION

This Court finds the *Matthews* and *Snipes* cases persuasive and in harmony with the Texas cases. The first note was signed by Mrs. Gillie. The second note was signed by Mr. Gillie. He had no liability on the first note; she had no liability on the second. Clearly there was a novation and the second note paid off the first. The Bank's purchase money security interest was lost when the second note was signed. Therefore, the Court holds that the Debtors may avoid the Bank's lien pursuant to § 522(f) of the Bankruptcy Code.

ORDER ACCORDINGLY.[3]

---

3. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.