**In the Matter of Harold & Barbara WIEGERT, Debtors.**

**Bankruptcy No. BK90–40260.**

United States Bankruptcy Court, D. Nebraska.

June 21, 1991.

---

Vincent Powers, Lincoln, Neb., for debtors.

John C. Hahn, Lincoln, Neb., for Lincoln Office Equipment.

Bradley Buethe, Lincoln, Neb., for Sears, Roebuck & Co.

Kathleen Laughlin, Omaha, Neb., Chapter 13 Standing Trustee.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

The issues before the court are whether a lien held by Sears, Roebuck and Company is secured or unsecured and whether the lien may be avoided under 11 U.S.C. § 522(f) as a non-purchase money, non-possessory security interest in exempt property. I conclude that Sears' lien is secured and that the lien may not be avoided. Sears has successfully developed a structure for its consumer financing which preserves to it a purchase money security interest not vulnerable to successful challenge under § 522(f).

## FACTS

The terms of Sears' consumer credit financing are set forth in a SearsCharge Security Agreement. At the time of each purchase, the customers must sign a sales slip which incorporates the terms of the SearsCharge Security Agreement. The debtors did not sign a SearsCharge Security Agreement. However, the sales slips signed by Barbara Wiegert and Darcie Wiegert state immediately above the signature line, "I grant Sears a security interest or lien in this merchandise, unless prohibited by law, until paid in full."

Sears filed a proof of secured claim in this bankruptcy case for $590.38. Sears claims as security a mattress and boxspring purchased on August 16, 1988, for $396.11 by debtors' daughter, Darcie Wiegert, and a color television purchased on December 14, 1988, for $272.19 by debtor,

Barbara Wiegert. Immediately prior to the purchase of the mattress and boxspring, the debtors owed $239.96 on their account with Sears. After the purchase of the mattress and boxspring, but before the purchase of the color television, the debtors paid $294.00 on their Sears account. In accordance with the terms of the SearsCharge agreement, Sears applies payments first to finance charges, then to the earliest charges on the account. If more than one item is charged on the same date, payments are applied first to the lowest priced item. The lien is released upon payment of the purchase price plus interest. Sears applied the $294.00 payment as provided in the SearsCharge agreement. The first $239.96 was applied to the account balance prior to the purchase of the mattress and boxspring. The remaining $54.04 was applied to the purchase of the mattress and boxspring. Accordingly, on the date of debtors' bankruptcy petition there remained a balance due Sears of $315.07 on the mattress and boxspring, and $272.19 on the color television, for a total of $587.26, plus interest.

## DISCUSSION

■ *Security interest in property.* Debtors assert that Sears' claim is unsecured. Under § 9–203 of the Nebraska Uniform Commercial Code, a security interest is not enforceable unless: 1) the debtor signs a security agreement which contains a description of the collateral; 2) value has been given; and 3) the debtor has rights in the collateral. Sears has acknowledged that debtors did not sign the SearsCharge Security Agreement. However, Sears asserts that a valid security interest was created by the Sears sales slip. Sears cites *In re Hardage*, 99 B.R. 738 (Bankr. N.D.Tex.1989) which held that Sears' sales slips created valid security interests because it was clear that the customer and Sears intended the sales slips to be the security agreements. *Id.* at 742.

The sales slip contains the essential terms of a security agreement. It identifies the collateral. It is signed by the debtor, and it grants Sears a security inter-

est. Accordingly, I conclude that the Sears sales slips did create valid security interests. *In re Hardage, supra.* The terms of the security agreement are those set forth on the sales slips and in the SearsCharge Security Agreement. The terms of the SearsCharge Security Agreement govern the transaction because the agreement is incorporated by the explicit terms of the sales slip. The fact that one of the debtors signed the sales slip for the color television, while debtors' daughter signed the sales slip for the mattress and boxspring, is not problematic as the debtors have not disputed the charge by their daughter and have acknowledged their liability for the charge. Darcie Wiegert's signature on the sales slip and authorized use of the SearsCharge account was sufficient to bind the debtors and to create a security interest in the mattress and boxspring. Sears gave value because it provided goods and debtors obtained rights in the goods at the time of sale. All requirements of U.C.C. § 9–203 are met. Therefore, Sears holds an enforceable security interest.

■ *Purchase money security interest.* Debtors' alternative argument is that Sears does not have a purchase money security interest, and therefore, debtors may avoid Sears' lien under 11 U.S.C. § 522(f) because the lien impairs an exemption. A security interest is a purchase money security interest to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price. Since Sears retained a security interest in merchandise sold to secure the unpaid purchase price, it is clear that Sears initially held a purchase money security interest in the color television, the mattress and boxspring. The issue is whether the lien subsequently lost its purchase money status.

■ Debtors assert that Sears' lien lost its purchase money character when several purchases were combined into the same account. Further, debtors assert that the effect of Sears' billing system is to refinance the debtors' purchases each time a payment is made, thereby transforming the purchase money lien into a non-purchase money lien. *See e.g., In re Matthews,* 724 F.2d 798 (9th Cir.1984); *In re Manuel,* 507 F.2d 990 (5th Cir.1975); *In re Gillie,* 96 B.R. 689 (Bankr.N.D.Tex.1989); *In re Bowen,* 87 B.R. 70 (Bankr.E.D.Mo.1988). *Contra In re Frizzell,* 104 B.R. 75 (Bankr. S.D.Ind.1989). In *In re Kruse,* 116 B.R. 708 (Bankr.D.Neb.1990), I held that the purchase money character of a consumer loan was not impaired by a future advance of non-purchase money, provided that no payments were made to the creditor after the future advance had been made. In *Kruse, supra* I recognized that if payments had been made it may be difficult to determine the unpaid balance of the purchase money loan and that the purchase money security interest may cease to exist.

However, *Kruse* and the cases cited by the debtors are distinguishable from the case now before me. For example, in *In re Manuel, supra,* the terms of the security agreement constituted a true cross-collateral security agreement, in that the creditor was to retain its security interest in all items of collateral until all obligations owed to the creditor were paid. Under such an arrangement, the lien in an item of collateral secures the unpaid obligation of debtor to pay obligations other than the purchase price of the item. Thus, the purchase money status is lost. This is not the case under the Sears arrangement because the security interest in an item is released as soon as its purchase price is paid and Sears has no cross-collateralization. The Sears transactions do not involve refinancing as do several of the cases relied on by the debtors. Here, although payments had been made, the security agreement specifically provides how payments are to be allocated, making it possible to determine the unpaid balance on any item of collateral at any time. Sears first allocates payments to finance charges, then to the oldest purchase. Once a purchase has been paid in full, Sears releases the lien on that particular item and applies the payments to the next oldest purchase. In *Matter of Keller,* 29 B.R. 91 (Bankr.M.D.Fla.1983), the court determined that where the contract provides that payments will be applied first to the unpaid amount of the oldest purchase, the vendor retained its valid purchase mon-

ey security interest in whatever items had not yet been fully paid under the terms of the contract. I agree with that decision. Under the terms of the security agreement in this case, Sears retained an interest in property sold to secure only the unpaid purchase price. Upon receipt of payment, Sears' purchase money security interest was released. Accordingly, Sears holds a valid purchase money security interest in any items which remain unpaid and its lien may not be avoided under 11 U.S.C. § 522(f).

Sears has thus developed an approach to purchase money consumer financing that permits it to be protected in bankruptcy from a debtor's avoiding power under 11 U.S.C. § 522(f). The essential terms of the Sears security agreement are that:

1) Sears retains a lien in merchandise sold.

2) The lien secures *only* the unpaid purchase price of particular merchandise, plus interest thereon.

3) There is no cross-collateralization.

4) The lien is released upon payment of the purchase price plus interest.

5) The outstanding unpaid purchase price can be exactly ascertained at any time. Payments are applied, by agreement, first to unpaid finance charges, and then to pay for the earliest charges on the account. If more than one item is charged on the same date, payments are applied first to the lowest priced item.

I believe, in general, that § 522(f) has been too broadly construed by bankruptcy courts and that these same courts too narrowly construe the concept of purchase money security interest. Section 522(f) has been used to avoid liens retained by sellers to secure the unpaid purchase price of goods sold. Section 522(f) was never intended to be a vehicle for avoidance of a lien retained by the seller and it may not be so used on the facts of this case.

The parties have stipulated that on the date of the bankruptcy petition there remained $315.07 outstanding on the purchase price of the mattress and boxspring and that the full price of the color televi-

sion remained outstanding. Since debtors had not yet fully paid for these items, Sears still holds a valid purchase money security interest therein. Therefore, Sears lien may not be avoided under 11 U.S.C. § 522(f).

IT IS THEREFORE ORDERED, that the lien of Sears may not be avoided and that the objection to claim of Sears is overruled.