**In re William Joseph HRNCIRIK and Mary Rosalie Hrncirik, Debtors.**

**William Joseph HRNCIRIK and Mary Rosalie Hrncirik, Plaintiffs,**

v.

**FARMERS NATIONAL BANK OF SEYMOUR, TEXAS, Defendant.**

**Bankruptcy No. 790–70220 RCM–7. Adv. No. 790–7026.**

United States Bankruptcy Court, N.D. Texas, Wichita Falls Division.

March 26, 1992.

Douglas J. Baker, Plano, Tex., for plaintiffs.

Ron L. Yandell, Wichita Falls, Tex., for defendant.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

The following are the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, with respect to the February 26, 1992 trial on the complaint of William Joseph Hrncirik and Mary Rosalie Hrncirik ("Debtors") to avoid the lien of Farmers National Bank of Seymour, Texas ("Defendant" or "FNB") on certain farm equipment and vehicles.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a), (b), and (d), and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## Background Facts

Debtors filed a voluntary Chapter 7 petition on July 27, 1990. At the time of the filing, they owed FNB $171,543.09, secured by a lien on the following farm equipment and vehicles:

| | |
|---|---|
| 1980 Chevrolet pickup | |
| 1973 Chevrolet pickup | |
| 4440 John Deere tractor | |
| 16 × 10 John Deere drill | |
| * Schafer offset disc | ($2,200) |
| two 15–shank Pechacek chisels | |
| * 5 × 16 John Deere plow | ($250) |
| 24' gooseneck trailer | |
| * 4 × 16 case plow | ($150) |
| 9–shank bog ox chisel | |
| * 3–section Noble harrow | ($50) |
| 400 John Deere rotary hoe | |
| * 630 John Deere tractor | ($1,000) |
| * 5' Mohawk plower | ($250) |
| * 4020 John Deere tractor with duals | ($5,150) |

The values in parentheses are the values on Amended Schedule C (formerly B–4). *See also*, values of equipment on which lien was sought to be avoided on p. 838 hereof.

Debtors filed an exemption statement claiming the full exemptions permitted under Texas law. On their original Schedule B–4, Debtors claimed no farm equipment or tools as exempt property. In fact, on July 25, 1990, Debtors filed a statement of intention to surrender all the items in which FNB asserted a lien, with the exception of the 1980 Chevrolet pickup, the 630 John Deere tractor, and the 5' Mohawk mower.

■ Despite FNB's demand, Debtors refused to relinquish possession of FNB's collateral within the requisite forty-five day period. Instead, they filed this adversary proceeding, claiming that FNB held a non-possessory, nonpurchase-money lien in personal, family, or household goods subject to avoidance under § 522(f) of the Bankruptcy Code.[1] By trial amendment, Debtors offered as an alternative basis for exempting the goods, that they constituted "tools of the trade". § 522(f)(2)(B).

FNB obtained a lifting of the stay on January 11, 1991. A discharge was granted Debtors on January 31, 1991.

■ Plaintiffs' adversary proceeding remained pending, but was essentially inactive until the United States Supreme Court decided *Owen v. Owen*, —— U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Subsequent to the Supreme Court's decision in *Owen*, Debtors moved to reopen their bankruptcy estate (which the Court permitted) to allow them to amend Schedule B–4, to list as exempt property the farm equipment previously proposed to be surrendered.[2] The amendment was allowed.

In response to Debtors' complaint, FNB asserts the requirements of § 522(f)(2)(B) have not been met, in that it possessed a purchase money security interest in the disputed goods, and the goods do not qualify as tools of the Debtors' trade.

Debtors were in possession of the property in question from the time of filing their bankruptcy petition through trial.

## Factual Background

FNB has financed Debtors' farming operations since the 1970's. On an annual

---

* For an explanation of underlining, see n. 2 herein.

1. None of the property, the subject of the adversary proceeding, is covered within the definition, household furnishings or goods. This Court adopts the definition set out in *In re Courtney*, 89 B.R. 15 (Bankr.W.D.Tex.1988) quoting *In re Bandy*, 62 B.R. 437, 439 (Bankr. E.D.Cal.1986):

   'household goods ... includes any personal property which is normally used by and found in the residence of a debtor ... [or] property that enables the debtor ... to live in a usual convenient and comfortable manner or that has entertainment or recreational value....'

   *Courtney, supra* at 16.

2. Additionally, Debtors agreed to abandon certain items of farm equipment during the course of the trial in order to come within the $30,000 personal property limitation set out in § 42.001, Tex.Prop.Code Ann. (1992). Those items are marked by an asterisk on Debtors' Exhibit PX–A; the items that were abandoned on date of trial were all the items underlined on p. 837 hereof. In addition, the Court excludes from the relief sought by Debtors in this adversary proceeding one item of equipment not previously identified on Debtors' schedules, or made the subject of the adversary proceeding. Defendant clearly adduced evidence that it advanced the $600 purchase money price for that item, a round hay bale loader. FNB's purchase money lien in that item is not, therefore, subject to avoidance under § 522(f) of the Code. *See, In re Kelly*, 133 B.R. 811 (Bankr.N.D.Tex.1991).

basis, Debtors would borrow sufficient funds to conduct their farming operations, with extensions and renewals granted at the time of a crop harvest to finance the following year's operations. As of the date of the filing, Debtors' indebtedness to FNB had been consolidated into three notes. FNB is the owner and holder of the following three notes: (i) note in the original principal amount of $75,600, dated July 27, 1989 (operating line of credit) ("Note 1"); (ii) note in the original principal amount of $45,000, dated January 29, 1988 ("Note 2"); (iii) note in the original principal amount of $80,000, dated January 29, 1988 ("Note 3"). At the time of the bankruptcy filing, Notes 1–3 had matured by their terms, and were in default.

On or about January 29, 1988, Debtors signed and delivered to FNB certain security agreements granting FNB a properly perfected security interest in all crops, livestock, and machinery and equipment now owned or hereafter acquired, used in the operation of Debtors' farm. In addition, Debtors granted FNB a lien in a certificate of deposit held at the Olney Bank. FNB's liens secured all debts owed to FNB, including, but not limited to Notes 1–3.

None of the following items, which are valued as of the petition date, were purchased through the refinancing represented by Notes 1–3. After the abandonment (n. 2), the following items are the only ones remaining on which Debtors sought to avoid Defendant's lien:

| ITEM | VALUE |
| --- | --- |
| 1980 Chevrolet pickup | $ 1,500 |
| 1973 Chevrolet pickup | –0– |
| 4440 John Deere tractor | $17,500 |
| 15–shank Pech. Chsl. plow | $ 1,400 |
| 24' gooseneck trailer | $ 2,250 |
| 9–shank bog ox diesel | $ 850 |
| 400 John Deere rotary hoe | $ 800 |

FNB could only identify one item of farm equipment toward the purchase of which it had advanced funds, the 4440 John Deere tractor. Specifically, it advanced two payments—one in 1982 and one in 1983. The tractor itself, however, had been paid off entirely prior to the 1988 and 1989 refinancings of the FNB loans.

### Conclusions of Law

Bankruptcy Code § 522(f) provides, in pertinent part, that:

... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is ... a nonpossessory, nonpurchase-money security interest in any ... household furnishings, household goods ... or tools, of the trade of the debtor....

Since the Bankruptcy Code does not define the term "purchase-money security interest", it is necessary to look to state law for a definition. *In re Manuel*, 507 F.2d 990 (5th Cir.1975); *In re Gillie*, 96 B.R. 689 (Bankr.N.D.Tex.1989); *In re Snipes*, 86 B.R. 1006 (Bankr.W.D.Mo.1988).

■ Section 9.107, Tex.Bus. & Com.Code Ann. (Vernon 1991) defines the purchase-money security interest as follows:

A security interest is a 'purchase money security interest' to the extent that it is

(1) taken or retained by the seller of the collateral to secure all or part of its price; or

(2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

■ Defendant's lien does not qualify as a purchase-money interest under either prong of § 9.107. Defendant did not sell any of the goods to Debtors. Defendant did not make advances or give value to enable Debtors to purchase their farm equipment, with the exception of the 4440 John Deere tractor. However, as to that item, the purchase-money character of that obligation was extinguished by the subsequent renewals and refinancings of the notes, in that the 1988 and 1989 notes did not give Debtors any further rights in the tractor. They already owned the tractor at

the time of the refinancings.[3]

■ The fact that FNB's lien in the disputed property is not purchase money in character is not dispositive of the voidability of its lien under § 522(f). The farm equipment and vehicles must qualify as tools of the Debtors' trade. *In the Matter of Richardson*, 47 B.R. 113, 12 C.B.C.2d 466 (Bankr.W.D.Wis.1985). Specifically, because Debtors elected state exemptions, the Court must determine which, if any, of the listed items qualifies as tools of the trade under § 42.002(3)(B) of the Texas Property Code. Section 42.002(3)(B) of the Texas Property Code provides an exemption for personal property in the nature of "tools, equipment, books, and apparatus, ... used in a trade or profession". Also, the property must be "reasonably necessary for the family".[4] Exemption rights in bankruptcy are determined as of the date the petition is filed. § 522(b)(2)(A); *Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir.1967); *In the Matter of Richardson, supra*, 47 B.R. 113, 12 C.B.C.2d at 474.

The Texas exemption for tools and equipment used in a trade was interpreted restrictively to cover only those items that properly belong to and are essential to conducting Debtors' particular business. *In re Hernandez*, 131 B.R. 61 (Bankr. W.D.Tex.1991) (farm tractor would not be exempted under Texas law as tool of trade in that it was not vital to debtor's paving business or peculiarly adapted to or generally useful in paving industry); *In re Weiss*, 92 B.R. 677 (Bankr.N.D.Tex.1988) (motor vehicles and trailers apparently useful in debtor's business, could not be claimed as tools of trade, because they were not peculiarly adopted to the debtor's trade or profession); *In re Swift*, 124 B.R. 475 (Bankr.W.D.Tex.1991) (Debtor's assertion that equipment, furniture, and fixtures were needed to carry on insurance business at certain level of productivity was insufficient to show items were peculiarly adapted to his trade, and therefore, exempt); *In re Leva*, 96 B.R. 723, 734 (Bankr.W.D.Tex. 1989).

■ Applying § 42.002(3)(B), the two vehicles, the 1973 and 1980 Chevrolet pickup trucks, are not exempt as tools of trade, and therefore, FNB's lien in that property is not subject to avoidance. Debtors' amended Schedule B–4 describes the 1973 Chevrolet pickup truck as wrecked (and presumably being in a wrecked condition on the petition date). In such condition, it is difficult to see how that item fairly belongs to, or is or was usable in, Debtors' trade. Accordingly, the exemption claimed

---

**3.** Refinanced obligations are excluded by definition from being purchase-money in nature. A lender, who is not a seller, must give present consideration to qualify as a purchase-money security interest creditor under § 9.107. The 1972 official UCC comment to § 9.107 reads, in relevant part:

> When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation': the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a preexisting claim or antecedent debt.

**4.** Section 42.002(3)(B), the result of a 1973 amendment and codification, represented part of the legislature's attempt to modernize Texas exemptions. McKnight, *Modernization of Texas Debtor–Exemption Statutes Short of Constitutional Reform*, 35 Tex.Bar J. 1137 (Dec.1972).

Recently, effective May 24, 1991, § 42.002(3)(B) of the Texas Property Code was replaced by § 42.002(a)(4), and the requirement that personal property be "reasonably necessary for the family" was deleted from that exemption. The amendment was not intended to be applied retroactively. The legislative history to that amendment provides:

> 'The changes in law made by this Act do not apply to property that is, as of the effective date of this Act, subject to a voluntary bankruptcy proceeding or to valid claims of a holder of final judgment who has, by levy, garnishment, of other legal process, obtained rights superior to those that otherwise would be held by a trustee in bankruptcy if a bankruptcy petition were then pending against the debtor. That property is subject to the law as it existed immediately before the effective date of this Act, and the prior law is continued in effect for that purpose.'

Debtors' voluntary Chapter 7 bankruptcy case was commenced July 27, 1990, prior to the statutory amendment to the Texas Property Code, and therefore, the exempt status of Debtors' property is governed by § 42.002(3)(B).

for the 1973 wrecked pickup as a tool of the trade is denied. *Accord, In re Hernandez, supra* at 63. In addition, though it is likely the 1980 Chevrolet pickup truck was useful to Debtors' business, there was insufficient proof that it was essential to that business, nor was it shown that it was peculiarly adapted to or generally usable in that business. Therefore, it has only general value and use to Debtors' business as overall transportation (really not distinct from an automobile), and, under Texas law, is not exempt as a tool of the trade, or subject to lien avoidance.[5]

Though it is undisputed the other farm equipment items claimed by Debtors are peculiarly adapted to farming operations, Debtors introduced insufficient evidence demonstrating the items were "reasonably necessary for the family". The *Leva* court, *supra*, has attempted to define the requirement of § 42.002(3)(B), Tex. Prop.Code Ann., that the claimed exempt item be "reasonably necessary to the family". Section 42.002(3)(B), Tex.Prop.Code Ann., in effect at the time (*See*, n. 4 herein), provided in pertinent parts the following personal property is eligible for exemption:

(3) if *reasonably necessary* for the family or single adult:

\* \* \* \* \* \*

(B) tools ... used in a trade or profession; ...

(Emphasis added). That court has suggested an approach reminiscent of the homestead exemption analysis, requiring a showing that the property is in fact used, and that the debtor intends to use it for the same purpose. *In re Leva, supra* at 725. The debtor's relationship with the property is at the heart of the Court's analysis. The claimed exempt item must be used with sufficient regularity to indicate actual use. "Infrequency of [use] will tend to undermine this all-important predicate factor to exemption." *In re Leva, supra* at 734. In *Kelley v. Shields,* 448 S.W.2d 135, 137 (Tex.Civ.App.—San Antonio 1969, writ

ref'd n.r.e.), the court, in construing a prior Texas exemption statute on tools of trade, stated:

... such provision is definite enough to include only such tools and apparatus as properly belong thereto and are *essential* to the conduct of the business. For instance, the printing press, type, cases, etc., are tools belonging to the printer; the awl, last, etc., to the shoemaker; the forge, anvil, tongs, hammers, etc., to the blacksmith; the saw, hammer, plane, chisel, etc., to the carpenter....

(Emphasis supplied). In McKnight's article, *supra* at 1138 (n. 4 herein), he stated: "By attaching the 'reasonably necessary' proviso to this exemption courts should be freed from some of the difficulties which they have hitherto encountered."

Other jurisdictions have similarly imposed a requirement that the debtor demonstrate a reasonable intent to use the farm implements before recognizing them as exempt and subject to lien avoidance under § 522(f)(2)(B). The courts have held that a more realistic definition should take into account the intensity of the debtor's past farming activities, and the sincerity of his intentions to continue farming, as well as evidence that the debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted, and on which lien avoidance is sought. *In re LaFond,* 791 F.2d 623 (8th Cir.1986) (to determine intent, the *LaFond* court examined both pre and postpetition conduct); *Middleton v. Farmers State Bank of Fosston,* 41 B.R. 953, 955 (D.Minn.1984); *In re Yoder,* 32 B.R. 777 (Bankr.W.D.Pa.1983), *aff'd in part, rev'd in part on other grounds,* 48 B.R. 744 (D.Pa.1984); *In re Pommerer,* 10 B.R. 935 (Bankr.D.Minn.1981); *In the Matter of Richardson,* 47 B.R. 113, 12 C.B.C.2d 466 (Bankr.W.D.Wis.1985) (debtor must either be engaged in farming operations or demonstrate a reasonable prospect of reengaging in farming to utilize § 522(f)(2)(B)'s lien

---

5. While a pickup truck is exempt under § 42.002(4)(I) (Vernon 1984), the only basis for lien avoidance under § 522(f)(2)(B) would be if it were also a "tool" of trade. Under the facts of the case, it is not a tool of trade. *In re Weiss, supra; In re Trainer,* 56 B.R. 21 (Bankr.S.D.Tex. 1985); for specially equipped vehicles, *see, In re Seacord,* 7 B.R. 121 (Bankr.W.D.Mo.1980).

avoidance provisions to allow tractor exempt status as tool of trade). Though those cases involve debtors claiming exemptions under federal law, their analysis is instructive in evaluating what constitutes a "tool of the trade".

In the instant case, Debtors are unable to show that the farm equipment described above is reasonably necessary to their trade. Over the past three years, Debtors have substantially reduced their farming operations. At the time of the 1988 loans, Debtors represented that they farmed 1,251 acres in Baylor County, fifteen miles southeast of Seymour, Texas, at least 240 acres of which they owned. In the fifteen months since the filing of the bankruptcy petition, Debtors have limited their farming operations to sixty acres of leased land. Prepetition, Debtors discontinued any livestock operation, which operation had involved approximately seventy-plus head of cattle. The schedules and testimony do not clarify the exact acreage now owned by Debtors. Debtors' petition listed their occupation as farming/road maintenance.

Mr. Hrncirik first testified that he was not using the 4440 tractor at all post-petition: "I don't farm, only farm the sixty acres" (*i.e.*, the leased acreage). He further testified that he used his nephew's farm equipment. He then changed his testimony and said he used the tractor "some—very little—not much". He used the drill "a little, not much". He used the chisel plow "just once". He used the 1850 gooseneck trailer "little", and with respect to the 400 John Deere rotary hoe, there was no post-petition use. His only testimony regarding his farming intent, at any time, was that he was not going to farm more than the sixty leased acres, and that at trial he had no crops growing. He had only planted one crop on the sixty acres post-petition, *i.e.*, in fifteen months. There was no testimony regarding how often he intended to farm the sixty leased acres. There was no testimony offered regarding prospective income from farming at the date of bankruptcy or subsequent thereto. As best as can be determined from the evidence, at date of bankruptcy, Debtors had substantially retired from a farming operation. There was insufficient proof that Debtors were using the equipment and vehicles at date of bankruptcy, or intended to use them post-petition. *See*, n. 2 for the implements abandoned during trial by Debtors to come within the $30,000 limit. The Court, on this record, finds insufficient evidence to support Debtors' position that the equipment and vehicles are reasonably necessary to their trade as tools of their trade, and therefore, FNB's lien in that property is not subject to avoidance.

The relief requested in Debtors' lien avoidance action is denied.